Sophie BERSHAD, Appellant,

v.

Wilson B. WOOD and Samuel L. Berger, Appellees.

No. 16933.

United States Court of Appeals Ninth Circuit.

May 2, 1961.

McRae, Elliott & Thompson and Howard F. Thompson, Phoenix, Ariz., for appellant.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott and Sharon L. King, Attys., Dept. of Justice, Washington, D. C., Jack D. H. Hays, U. S. Atty., and Ralph G. Smith, Jr., Asst. U. S. Atty., Phoenix, Ariz., for appellee.

Before POPE and HAMLIN, Circuit Judges, and JAMESON, District Judge.

HAMLIN, Circuit Judge.

Sophie Bershad, appellant herein, filed an action in the Superior Court of the State of Arizona against Wilson B. Wood and Samuel L. Berger, appellees herein, seeking general and punitive damages. The appellees petitioned for removal to the United States District Court for the District of Arizona on the ground that they were officers of the United States and the Internal Revenue Service, Treasury Department, and the petition was granted. In the district court the appellees moved that the action be dismissed "because the complaint fails to state a claim upon which relief can be granted." This motion was granted, and an appeal was taken to this court. Jurisdiction in the district court was by reason of 28 U.S.C.A. §§ 1442(a) (1) and 1446, and jurisdiction is in this court by reason of 28 U.S.C.A. § 1291.

The complaint alleges the following: Appellee Wood was the duly appointed and qualified District Director of Internal Revenue District of Arizona, Treasury Department, United States of America; and appellee Berger was a duly appointed and qualified collection officer of the Internal Revenue Service, District of Arizona, Treasury Department, United States of America. Appellees caused to be served upon the Farmers and Stockmens Bank, Phoenix, Arizona, a notice of levy by the terms of which said bank was

notified that there was due, owing, and unpaid from Leo Bershad to the United States the sum of $56,190.74 for internal revenue taxes. The notice of levy contained the following typewritten statement on the Treasury Department form:

"You are further advised that all monies in accounts now standing in the name of Sophie Bershad, also known as Sophie Keller, also known as Sophie Zicari, also known as Sophie Montelbano, are in truth and in fact the property of Leo Bershad * * * and demand is hereby made for these monies in an amount sufficient to satisfy this levy."

The notice of levy also stated that demand had been made upon the "taxpayer" for the amount set forth and that such amount was still due, owing and unpaid from this "taxpayer" and "that the lien provided for by Section 6321, Internal Revenue Code of 1954, now exists upon all property or rights to property belonging to the aforesaid taxpayer." The notice of levy further notified the bank that all property "belonging to this taxpayer * * * and all sums of money * * * owing from you to this taxpayer are hereby levied upon and seized for the satisfaction of the aforesaid tax * * * to be applied as a payment on his tax liability." The bank, in pursuance to the said notice of levy, withheld from appellant's personal account in said bank funds which were the sole and separate property of appellant, in the amount of $30,-626.08. On November 9, 1956, the United States of America, as plaintiff, filed a complaint for the foreclosure of tax liens against Sophie Bershad, Leo Bershad and the Farmers and Stockmens Bank. The complaint alleged in part that the said bank was a depositary, in the name of Sophie Bershad, wife of defendant Leo Bershad, of a sum amounting to $30,626.-08 which was in part or in total sum the property of defendant Leo Bershad. The complaint further prayed in part that the "court determine, adjudge and decree

that the funds in possession of the bank in the account of Sophie Bershad, belonged to the defendant Leo Bershad and were his funds and not those of his wife." On December 3, 1956, the bank by written stipulation with the United States of America deposited in the registry of the United States District Court for the District of Arizona the sum of $30,626.-08, said sum being the balance of appellant's funds on deposit the date the levy was served. The action brought by the United States on November 9, 1956, was tried in June, 1958, and the district court determined, adjudged and decreed that the funds on deposit in the name of Sophie Bershad were her sole and separate property and that the United States of America had no claim of lien against said fund. Judgment was granted to Sophie Bershad for the said sum of $30,626.08.

The complaint [1] in the instant case also contained the following paragraph:

"Defendants Wilson B. Wood and Samuel L. Berger, in levying upon the funds of Sophie Bershad, acted wrongfully, maliciously, without probable cause, and in willful disregard of the rights of plaintiff herein; said defendants well knew or should have known that the lien or claim of the United States Treasury Department, Internal Revenue Service, against the property of Leo Bershad, was as against plaintiff herein a pretended and unfounded lien or claim which in truth and in fact did not exist against the funds of plaintiff."

Sophie Bershad had been required to employ attorneys to represent her to prevent the foreclosure of the government's "pretended and unfounded lien or claim"; she suffered certain loss by reason of being required to dispose of some interest in a business of hers through lack of funds; and the complaint stated that "the acts and conduct of defendants as aforesaid were malicious and plaintiff is entitled

1. Filed on Nov. 3, 1959, over one year after the order decreeing that the funds were the separate property of appellant.

to punitive damages in the sum of $30,-000."

Appellees contend that the action of the district court in dismissing the action was proper because they were officials of the United States Government and because they were at all times acting within the scope of their official powers.

The statute and regulations involved are § 6331 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 6331, and the Treasury Regulations on Procedure and Administration of the 1954 Code, which are set out in the margin.[2]

■ In considering the propriety of the district court's order dismissing the action, the allegations contained in the complaint must be considered true. Sidebotham v. Robison, 9 Cir., 1954, 216 F.2d 816.

■ Appellant, in her brief, "recognizes the general rule that judicial officers, quasi judicial officers, judges, prosecuting attorneys, executive and other officers of the government are immune from civil suit for acts committed by them while acting within the scope of their authority and in the performance of their official duties." Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396, 56 A.L.R. 239; Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780; Cooper v. O'Connor, 1938, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440; Gregoire v. Biddle, 2 Cir., 1949, 177 F.2d 579.[3]

Appellant, however, contends that this case does not come within the rule of the above cases. She contends that appellees acted beyond the scope of their authority, and that by reason of their acting beyond the scope of their authority, they are liable to her in damages.

Section 6331, Internal Revenue Code 1954, authorizes a levy where the person liable to pay any tax neglects or refuses to pay within ten days after notice and demand. Here the levy on the bank, drawn upon a Treasury Department form, stated that Leo Bershad owed

2. Internal Revenue Code of 1954:
"§ 6331. Levy and distraint
"(a) *Authority of Secretary or delegate.* —If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. * * *"

Treasury Regulations on Procedure and Administration (1954 Code):
"Sec. 301.6331–1 Levy and Distraint—
"(a) *Authority to levy*—(1) *In general.* If any person liable to pay any tax neglects or refuses to pay such tax within 10 days after notice and demand, the district director to whom the assessment is charged or, upon his request, any other district director may proceed to collect the tax by levy upon any property, or rights to property, whether real or personal, tangible or intangible, belonging to such person or on which there is a lien provided by section 6321 or 6324 (or the corresponding provision of prior law) for the payment of such tax. As used in section 6331 and this section, the term 'tax' includes any interest, additional amount, addition to tax, or assessable penalty, together with any costs and expenses that may accrue in addition thereto. * * *"

3. As this court stated in O'Campo v. Hardisty, 9 Cir., 1958, 262 F.2d 621, 625:
"This immunity for discretionary governmental action developed in actions against judicial officers, Bradley v. Fisher, 1871, 13 Wall. 335, 80 U.S. 335, 20 L.Ed. 646. At an early date the rule was extended to protect legislative and administrative officers, Spalding v. Vilas, 1896, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780. A list indicating officers who have been held to be protected by this immunity appears in 22 U. of Chi.L.Rev. (1955) 641.

" * * * That minor governmental officers are within the scope of the immunity is well established. Complaints were dismissed against, or summary judgment granted to, the following minor governmental officials on the basis of their immunity: State Psychiatrist and Superintendent of State Hospital, in United States ex rel. McNeill v. Tarumianz, D.C.Del.1956, 141 F.Supp. 739; Internal Revenue Agents, in Hartline v. Clary, D.C.S.C.1956, 141 F. Supp. 151; Officers of Veterans Administration Regional Office, in De Busk v. Harvin, 5 Cir. 1954, 212 F.2d 143."

taxes in the sum of $56,190.74 and that moneys in the bank standing in the name of Sophie Bershad were in fact the property of Leo. Demand was made that these moneys be seized to be applied to the tax liability of Leo to the United States. No claim was made personally by appellees to any of the moneys; it was seized for the United States. Whatever appellees did was done by them as officers of the Internal Revenue Service, for the benefit of the United States, and by reason of their authority as officers of the Internal Revenue Service. In Gregoire v. Biddle the court said:

"What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him." [4]

In Cooper v. O'Connor the complaint alleged that the defendant appeared before a grand jury and falsely, maliciously and without probable cause accused appellant of having committed crimes. The court said:

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute; or even that they should be specifically directed or requested by a superior officer. It is sufficient if they are done by an officer '*in relation* to matters committed by law to his control or supervision'; or that they have '*more or less connection with* the general matters committed by law to his control or supervision'." [Citations omitted] [5]

" * * * if the act complained of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law." [Footnotes omitted] [6]

We hold that the appellees in this case were acting within the scope of their official authority. They were in error in stating that money in Sophie's name was actually Leo's; for in a later action the district court found in favor of appellant on this issue, and the money seized was returned to her. But neither this fact nor the allegation of the complaint that appellees "acted willfully, maliciously, without probable cause" or that they "well knew or should have known that the lien * * * of the United States Treasury Department" was as against Sophie "a pretended and unfounded lien" was sufficient to support appellant's claim for damages. The question of the delicate balance that must be struck between private injury and public interest in a situation of this kind was discussed by Judge Learned Hand in Gregoire v. Biddle:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for ac-

4. 177 F.2d at page 581.

5. 99 F.2d at page 139.

6. 99 F.2d at page 138.

tion which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. * * *

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he

had been using his power for any of the purposes on whose account it was vested in him. * * * * " [7]

The cases relied upon by the appellant do not support her position. In three of the cases the court held that there was no jurisdiction and never decided the appeal on the merits.[8] Most of the others were either suits for an injunction [9] or actions seeking the return of property wrongfully taken.[10] However, some of the cases cited do merit independent consideration.

In Little v. Barreme, 1802, 2 Cranch 170, 2 L.Ed. 243, the issue before the court was whether the obedience of a military officer to an order of a superior excused him from damages. An act of the Congress authorized the President of the United States to "stop and examine any ship or vessel of the United States on the high seas * * * *bound, or sailing to,* any port or place within the territory of the French republic". (Emphasis added.) The Secretary of the Navy ordered the captains of United States naval vessels to stop merchant ships "bound to or *from* French ports." (Emphasis added.) Therefore, though Congress only authorized the seizure of vessels bound for France, the Secretary expanded the order to include vessels bound from France. Captain Little seized the Flying Fish, a vessel that later turned out to be a foreign vessel, apparently knowing that she was bound *from* a French port. The Supreme Court held that he was liable in damages, and that he was not immune because he followed an order from a su-

7. 177 F.2d at page 581, as quoted in Barr v. Matteo, 1959, 360 U.S. 564, 571, 79 S. Ct. 1335, 3 L.Ed.2d 1434.

8. Catalina Properties, Inc. v. United States, 1958, 166 F.Supp. 763, 143 Ct.Cl. 657; First National Bank of Emlenton, Pa. v. United States, D.C.W.D.Pa.1958, 161 F. Supp. 844; Johnston v. Earle, 9 Cir., 1957, 245 F.2d 793.

9. American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; Cannon v. Nicholas, 10 Cir., 1935, 80 F.2d 934; Goltra v. Weeks, 1926, 271 U.S. 536, 46 S.Ct. 613, 70 L. Ed. 1074; Harmon v. Brucker, 1958, 355

U.S. 579, 78 S.Ct. 433, 2 L.Ed 2d 503; Long v. Rasmussen, D.C.Mont.1922, 281 F. 236; Raffale v. Granger, 3 Cir., 1952, 196 F.2d 620; Scheer v. Moody, D. C.D.Mont.1931, 48 F.2d 327; Sistrunk v. Director of Internal Revenue, D.C.E.D. Tex.1954, 119 F.Supp. 78; Youngstown Sheet and Tube v. Sawyer, 1952, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153.

10. Moore Ice Cream Co. v. Rose, 1933, 289 U.S. 373, 53 S.Ct. 620, 77 L.Ed. 1265; Stuart v. Willis, 9 Cir., 1957, 244 F.2d 925; Weinberg v. United States, 2 Cir., 1942, 126 F.2d 1004.

perior. The issue of total immunity from suit was not raised, and the sole issue before the Court was whether the defendant was protected by an order illegally issued by his superior. Captain Little acted outside of the scope of his authority, in the parlance of the modern cases, and the Supreme Court did not allow him to hide behind the illegal order.

In Hendricks v. Gonzalez, 2 Cir., 1895, 67 F. 351, 353, the court held a customs official liable in damages for illegally detaining a ship. The official defended on the ground that he believed that the ship was "chartered and loaded for the purpose of transporting arms and munitions of war to the insurgents of Venezuela." The court said that "[T]here was not a particle of evidence brought to the attention of the collector tending to show that the vessel was intended to be employed in acts of war." Again there was no discussion of total immunity from suit. The only immunity issue raised was the possibility that the collector might be immune because he was acting under the orders of a superior.

In Bates v. Clark, 1877, 95 U.S. 204, 24 L.Ed. 471, the defendant, a United States military officer, was sued for damages sustained when he seized and destroyed a quantity of whisky owned by the plaintiff. One of the defenses was that the officer in good faith believed that the whisky was in Indian country and therefore subject to seizure. The Court made the following statement:

> "So the plea, that they had good reason to believe that this was Indian country and that they acted in good faith, while it might excuse these officers from punitory damages, is no defense to the action. If it had been Indian country, and it had turned out the plaintiffs had a license, or did not intend to sell or introduce the goods, the fact that the defendants acted on reasonable ground would have exempted them from liability."

In this case also there was no discussion of the concept of total immunity from suit.

We have come to the conclusion that the concept of total immunity from suit was not considered by the courts in these earlier cases. The courts seemed only concerned with whether the government official acted upon reasonable grounds in an area in which he had discretionary power. The Supreme Court's acceptance of Gregoire v. Biddle [11] impels us to the conclusion that the law has changed, and that it is now considered wise to leave some government agents entirely free from suit when they are acting within an area entrusted to their discretion.

The judgment of the district court is affirmed.