**LOS ANGELES CUSTOMS AND FREIGHT BROKERS ASSN.,**
Inc., Plaintiff,

v.

**Lester D. JOHNSON, Comm'r of Customs, William R. Knoke, District Director of Customs for the District of Los Angeles, General Services Administration, Region 9, Defendants.**

No. 67-1225.

United States District Court
C. D. California.

Dec. 7, 1967.

———◆———

Burton Marks, Marks & Schneider, Beverly Hills, Cal., for plaintiff.

Wm. Matthew Byrne, Jr., U. S. Atty., and Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief of Civil Division, Los Angeles, Cal., for defendants.

Roger Arnebergh, City Atty. of Los Angeles, Bourke Jones, Charles W. Sullivan, Asst. City Attys., and Frank Wagner, Deputy City Atty., for real party in interest, City of Los Angeles.

DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW and ORDER FOR DISMISSAL AND SUMMARY JUDGMENT

HAUK, District Judge.

Defendants have filed motions to dismiss and for summary judgment in this case in which plaintiff, an organization of customs brokers in the downtown area, seeks a permanent injunction prohibiting the move and transfer of the headquarters of the United States Customs-Collection District No. 27 from its location in the area commonly designated as downtown Los Angeles to the recently completed Customs Building, located approximately twenty-five miles distant on Terminal Island in the harbor area. In addition, the brokers seek a declaration that they are entitled to have all services and facilities currently furnished by defendants retained in the downtown area; or in the alternative a declaration either that the maintenance of the current customs service shall include, at a minimum, the downtown retention of the commodity specialist teams, or that adequate custom service be maintained in an amount proportionate to the volume of business and number of entries processed through the downtown Los Angeles area compared to the whole of the business transacted with customs brokers for the Los Angeles district of the United States Bureau of Customs.

The complaint contained two causes of action, the first being the original claim for declaratory relief that, in light of alleged representations made by defendants and plaintiff's reliance thereon, defendants are required to maintain in downtown Los Angeles all customs service currently furnished without curtailment or that the downtown customs service shall retain at least the commodity specialist teams, and the second seeking a temporary and permanent injunction restraining and enjoining defendants from removing the services furnished from the downtown Los Angeles area to the Terminal Island location. The Court issued a temporary restraining order and placed on calendar plaintiff's motion for a preliminary injunction which the Court denied after an extended hearing.

Plaintiff thereupon filed an amended and supplemental complaint setting forth a third cause of action asking for the further declaration that plaintiff is entitled to have all current facilities furnished by defendants retained in the downtown Los Angeles area or that adequate downtown custom service be retained in an amount proportionate to the volume of business and number of entries processed through the downtown area compared to the whole of the business transacted with customs brokers.

The defendants subsequently filed their answer and have now moved for summary judgment and dismissal.

The uncontested facts as set forth in the verified complaint, the amended and supplementary complaint, the plaintiff's affidavits and as admitted in the defendants' answer and set forth in the affidavits submitted by them are relatively simple.

Jurisdiction of this Court has been invoked pursuant to Title 5, United States Code, Sections 701 to 705, inclusive.[1]

The members of the plaintiff association are customs brokers with their principal place of business in Los Angeles, California. In general, the function and business of a customs broker is to facilitate the clearance of imports through the United States Bureau of Customs on behalf of importers by whom they are employed. The customs brokers have been operating in the downtown Los Angeles area since the Port of Los Angeles was opened in 1900, and all of the business of plaintiff's members is currently conducted in downtown Los Angeles at the "Customs House", located at 354 South Spring Street.

In 1961 the Bureau of Customs made the decision to build a new "Customs House" at Terminal Island, Los Angeles, California. In the prospectus for the new customs building submitted by the

1. 5 United States Code §§ 701–705:

"§ 701. *Application; definitions*

(a) This chapter applies according to the provisions thereof, except to the extent that—

(1) statutes preclude judicial review; or

(2) agency action is committed to agency discretion by law.

(b) For the purpose of this chapter—

(1) 'agency' means such authority of the Government of the United States, wheher or not it is within or subject to review by another agency, but does not include—

(A) the Congress;

(B) the courts of the United States;

(C) the governments of the territories or possessions of the United States;

(D) the government of the District of Columbia;

(E) agencies composed of representatives of the parties or of representatives of organizations of the parties to the disputes determined by them;

(F) courts martial and military commissions;

(G) military authority exercised in the field in time of war or in occupied territory; or

(H) functions conferred by sections 1738, 1739, 1743, and 1744 of Title 12; chapter 2 of title 41; or sections 1622, 1884, 1891–1902, and former section 1641(b) (2), of title 50, appendix; and

(2) 'person', 'rule', 'order', 'license', 'sanction', 'relief', and 'agency action' have the meanings given them by section 551 of this title."

"§ 702. *Right of review*

A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

"§ 703. *Form and venue of proceeding*

The form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus, in a court of competent jurisdiction. Except to the extent that prior, adequate, and exclusive opportunity for judicial review is provided by law, agency action is subject to judicial review in civil or criminal proceedings for judicial enforcement."

"§ 704. *Actions reviewable*

Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action. Except as otherwise expressly required by statute, agency action otherwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority."

"§ 705. *Relief pending review*

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings."

Administrator of the General Services Administration on May 23, 1962, it was set forth that the interest of the government would be more effectively served by the consolidation of all of the activities of the Bureau of Customs in Los Angeles at a single location in the harbor area, except for the mail examination function and a small administrative group. This prospectus was the subject of a hearing before the Subcommittee on Public Buildings and Grounds, Committee on Public Works, of the United States Senate, on June 27, 1962, and was approved by both the House and the Senate Committees on Public Works by resolution dated July 20, 1962.

Subsequently, plaintiff's members actively promoted and sponsored the proposed new customs house on Terminal Island, including the donative grant to the Federal Government by the City of Los Angeles of approximately nine acres of city-owned land on the Island for the sum of $2.00 as the site of the new customs house. This grant was actually made on October 2, 1963, through the technique of a friendly condemnation action filed in the United States District Court, Central District of California, case no. 63–1137–CC, in which the Federal Government acquired title by stipulated judgment.

Construction of the new customs building was undertaken and completed, and the defendants made plans to move all facilities and services currently conducted in the Customs House in the downtown Los Angeles area to Terminal Island on August 26, 1967. In its original complaint, plaintiff sought to enjoin defendants from implementing the move and transfer. The Court thereupon issued a temporary restraining order and placed the matter on calendar for a hearing on plaintiff's motion for a preliminary injunction. After an extended hearing, the Court denied the plaintiff's application for a preliminary injunction.

Now, in order to meet the planned moving date without delay, defendants Lester D. Johnson, Commissioner of Customs; William R. Knoke, District Director of Customs for the District of Los Angeles; and General Services Administration, Region 9, move the Court, pursuant to Rule 12(b) (1) and Rule 12(b) (6) of the Federal Rules of Civil Procedure, to dismiss the action on the ground that the Court is without jurisdiction of the subject matter of the action, and on the ground that the original complaint for declaratory judgment and injunction and the amended and supplementary complaint for additional declaratory relief fail to state a claim upon which relief can be granted.

The Court has examined the record before this Court, which includes, among other things, the complaint for declaratory judgment and injunction, the amended and supplementary complaint for additional declaratory relief, and affidavits submitted by defendants. The matter has been extensively argued by counsel, in writing and orally. Plaintiff has presented the same factual claims several times in the record and in its oral argument. Additionally, plaintiff has been given repeated opportunity to state and to expand upon its factual claims both in writing and in oral presentation. The Court has reviewed all of this material and concludes that even if every alleged fact that is favorable to plaintiff were true, such facts would not establish any cause of action for the plaintiff. On the contrary, taking all the facts alleged in the light most favorable to the plaintiff, and indulging every inference in support of plaintiff's allegations, it is clear that the defendants are entitled to summary judgment. There is no genuine issue as to any material fact and there is nothing to litigate.

Now having heard the arguments and having examined all the files, documents and records herein, the cause having been submitted for decision, and the Court being fully advised in the premises, the Court renders its decision.

*The Secretary of the Treasury has the authority to change the location of the Los Angeles Customs-Collection District Headquarters to Terminal Island, which authority has been exercised.*

The President of the United States is authorized to change the location of the Headquarters in any Customs-Collection District pursuant to the provisions of Title 19, United States Code, Section 2, which in pertinent part provides as follows:

"The President is authorized from time to time, as the exigencies of the service may require, to rearrange, by consolidation or otherwise, the several customs-collection districts and to discontinue ports of entry by abolishing the same or establishing others in their stead: *Provided,* \* \* \* the President is authorized from time to time to change the location of the headquarters in any customs-collection district as the needs of the service may require."

2. 19 United States Code § 2:
 "§ 2. *Rearrangement and limitation of districts; changing locations*

The President is authorized from time to time, as the exigencies of the service may require, to rearrange, by consolidation or otherwise, the several customs-collection districts ·and to discontinue ports of entry by abolishing the same or establishing others in their stead: *Provided,* That the whole number of customs-collection districts, ports of entry, or either of them, shall at no time be made to exceed those established and authorized as on August 1, 1914, except as the same may thereafter be provided by law. The collector of customs of each customs-collection district shall be officiaľy designated by the number of the district for which he is appointed and not by the name of the port where the headquarters are situated and the President is authorized from time to time to change the location of the headquarters in any customs-collection district as the needs of the service may require."

"Title 3—THE PRESIDENT

EXECUTIVE ORDER 10289
PROVIDING FOR THE PERFORMANCE OF CERTAIN

■ By Executive Order 10289, a copy of which has been filed with defendants' Return To Order To Show Cause Re Preliminary Injunction and Memorandum of Points and Authorities In Support Of Return, the President designated and empowered the Secretary of the Treasury to perform the function of changing the location of the headquarters in any customs-collection district, as set forth in 19 United States Code, Section 2 and Executive Order 10289 of September 17, 1951, 16 Federal Register 9499 (1951).² The Secretary is also empowered to change the location of customs-collection facilities by virtue of the general authority granted pursuant to 19 United States Code, Section 3.³

The Los Angeles customs-collection district is District No. 27, the area of which is set forth in 19 Code of Federal Regulations, Section 1.1(c) as follows:

"That part of the State of California lying south of the northern boundaries of the counties of San Luis Obispo, Kern, and San Bernardino, except the

FUNCTIONS OF THE PRESIDENT BY THE SECRETARY OF THE TREASURY

By virtue of the authority vested in me by section 1 of the act of August 8, 1950, 64 Stat. 419 (Public Law 673, 81st Congress), and as President of the United States, it is ordered as follows:
1. The Secretary of the Treasury is hereby designated and empowered to perform the following-described functions of the President without the approval, ratification, or other action of the President:
 (a) The authority vested in the President by section 1 of the act of August 1, 1914, c. 223, 38 Stat. 609, 623, as amended (19 U.S.C. 2), (1) to rearrange, by consolidation or otherwise, the several customs-collection districts, (2) to discontinue ports of entry by abolishing the same and establishing others in their stead, and (3) to change from time to time the location of the headquarters in any customs-collection district as the needs of the service may require."

3. 19 United States Code § 3:
 "§ 3. *Superintendence of collection of import duties*

The Secretary of the Treasury shall direct the superintendence of the collection of the duties on imports as he shall judge best." ·

counties of San Diego and Imperial, and that part of the State of Nevada comprising Clark County."

As indicated by the Affidavits of Joseph W. Barr, Acting Secretary of the Treasury, Lester D. Johnson, Commissioner of Customs, and Edwin F. Rains, Acting Commissioner of Customs, filed herein on behalf of defendants, action pursuant to the authority set forth in Executive Order 10289 has been taken and the move is from a place within the area of the district to another place also within the area of the district. Said move is also entirely within the boundaries of the customs port of entry of Los Angeles, California, the headquarters port of District No. 27, as set forth in T.D. 55341, 26 Federal Register 2550–51 (1961).

*This Court is without jurisdiction to enjoin the move of the District Headquarters for the reason that this action is an unconsented-to suit against the sovereign.*

A suit brought nominally against officers of the United States is, in fact, a suit against the sovereign, if the decree would operate against the sovereign. A judgment, the effect of which would be to restrain the Government from acting or which would interfere with the public administration, clearly would operate against the sovereign. State of Hawaii v. Gordon, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963); Dugan v. Rank, 372 U.S. 609, 619–621, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687–688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); United States ex rel. Brookfield Construction Co., Inc. v. Stewart, 119 U.S.App.D.C. 254, 339 F.2d 753, 754 (1964).

Prohibiting the defendants in this action from implementing the move, or requiring that the move be undone, would be a restraint on Government action and an interference with the public administration.

The specific standard to be applied when the suit is not one for damages but for specific relief, including an injunction either directing or restraining the defendant officer's actions, was set forth in Larson v. Domestic and Foreign Corporation, supra, as follows.

"* * * In each such case the question is directly posed as to whether, by obtaining relief against the officer, relief will not, in effect, be obtained against the sovereign. For the sovereign can act only through agents and, when an agent's actions are restrained, the sovereign itself may, through him, be restrained. * * * [This question] arises whenever suit is brought against an officer of the sovereign in which the relief sought from him is not compensation for an alleged wrong but, rather, the prevention or discontinuance, *in rem*, of the wrong. In each such case the compulsion, which the court is asked to impose, may be compulsion against the sovereign, although nominally directed against the individual officer. If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction." 337 U.S. at p. 688, 69 S.Ct. at p. 1460.

In relation to the third cause of action of plaintiff herein, it should be noted that the *Larson* case involved an attempt to obtain specific performance of a contract with the Government, and no doubt was left that such a remedy is not available. As a result, therefore, any question of fact relating to the existence or non-existence of a contract in this case cannot be in any way material to the consideration of the instant motions by defendants.

The only consent to suit in the district court against the United States founded on contract appears in 28 United States

Code Section 1346(a) (2).[4] Such consent is limited to a suit for damages not exceeding $10,000 in amount. A suit for damages against the United States based on contract for an amount in excess of $10,000 must be filed in the Court of Claims (28 U.S.C. § 1491).[5] Though the question is not material to the dismissal of this action defendants in no manner concede that there is now or ever has been any contract with plaintiff or its members regarding the location of any of the customs-collection facilities in the Los Angeles Customs-Collection District.

In the *Larson* case, two exceptions to the applicability of the general rule of sovereign immunity in cases in which Government officers are the nominal defendants are set forth. Ibid. at pp. 689–691, 69 S.Ct. 1457; Dugan v. Rank, supra, at 621–622, 83 S.Ct. 999. These exceptions apply only when, first, the action by the officers is beyond the scope of their authority, and, second, if the action is within the scope of an officer's authority, the authority itself, or the manner in which it is exercised is constitutionally void.

The action involved in this case, which is the action sought to be enjoined, is the move to Terminal Island. It cannot be argued that the authority to take this action is unconstitutional or that the manner in which the authority has been exercised, as indicated in the Affidavits filed on behalf of defendants, is unconstitutional.

In relation to scope of authority, there can be no question. Under the test and scope of authority as recently set forth in Bershad v. Wood, 290 F.2d 714, 717 (9th Cir. 1961), quoting, with approval, Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 139, 118 A.L.R. 1440 (1938):

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute; or even that they should be specifically directed or requested by a superior officer. It is sufficient if they are done by an officer *'in relation* to matters committed by law to his control or supervision'; or that they have *'more or less connection with* the general matters committed by law to his control or supervision'." [Citations omitted]

" * * * if the act complained of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law." [Footnotes omitted] 290 F.2d at 717.

Assuming, arguendo, that defendants have acted with malice, which defendants strenuously deny, such malice would not remove their actions from the scope of their official authority. Bershad v. Wood, supra, at 717–718;

4. 28 United States Code § 1346(a) (2):
"§ 1346. *United States as defendant*
(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:
 * * * * *
(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

5. 28 United States Code § 1491
"§ 1491. *Claims against United States generally*
The Court of Claims shall have jurisdiction to render judgment upon any claim against the United States:
(1) Founded upon the Constitution; or
(2) Founded upon any Act of Congress; or
(3) Founded upon any regulation of an executive department; or
(4) Founded upon any express or implied contract with the United States; or
(5) For liquidated or unliquidated damages in cases not sounding in tort."

Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir. 1949); Cooper v. O'Connor, supra, 99 F.2d at 141.

■ An examination of plaintiff's documents, filed herein, indicates that plaintiff's contention is not that the Secretary of the Treasury is without power to move the customs facilities, but that the move is in error. This cannot be a basis for judicial review. Title 19, United States Code, Section 2 [6] and Executive Order 10289 do not provide for review of the President's and the Secretary's exercise of discretion. Even if the decision were incorrect or were based on errors either of fact or of law, the courts would be powerless to restrain them from acting. Adams v. Nagle, 303 U.S. 532, 542, 58 S.Ct. 687, 82 L.Ed. 999 (1938).

### Plaintiff herein, and its members, are without standing.

Plaintiff relies on the Administrative Procedure Act, Title 5 United States Code, Sections 701–706 [7] as a basis for this Court's jurisdiction to consider the complaint and grant the relief requested.

■ It is clear that the Administrative Procedure Act has in no way altered the basic principle that one must have suffered a "legal wrong" in order to have standing to challenge the Government action. Duba v. Schuetzle, 303 F.2d 570, 574–575 (8th Cir. 1962); Kansas City Power & Light Co. v. McKay, 96 U.S. App.D.C. 273, 225 F.2d 924, 931–932 (1955), cert. den. 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780 (1955).

■ Title 5, United States Code, Section 702 (formerly 5 U.S.C. § 1009(a)) provides as follows:

"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."

The words "legal wrong" under the Act have been interpreted to mean the invasion of a legally-protected right. Braude v. Wirtz, 350 F.2d 702, 707 (9th Cir. 1965); Pennsylvania R.R. Co. v. Dillon, 118 U.S.App.D.C. 257, 335 F.2d 292, 294 (1964), cert. den. 379 U.S. 945, 85 S.Ct. 437, 13 L.Ed.2d 543 (1964).

The rule on standing preserved by 5 United States Code, Section 702 is that set forth in Perkins v. Lukens Steel Co., 310 U.S. 113, 60 S.Ct. 869, 84 L.Ed. 1108 (1940), as follows:

"It is by now clear that neither damage nor loss of income in consequence of the action of Government, which is not an invasion of recognized legal rights, is in itself a source of legal rights in the absence of constitutional legislation recognizing it as such." 310 U.S. at 125, 60 S.Ct. at 875.

■ An examination of the documents filed by plaintiff in this action leads to the inescapable conclusion that the only loss which plaintiff alleges is threatened by and would result from the move of the customs-collection district facilities to Terminal Island is an economic loss to the customs and freight brokers who constitute plaintiff's membership. In complete consistency with the line of authority preexisting the Administrative Procedure Act, the courts have held that allegations of economic injury, however serious, are insufficient as an allegation of a "legal wrong" under the Act which would support standing to sue for judicial review of Government action. Braude v. Wirtz, supra, at 706–707; Rural Electrification Admin. v. Central Louisiana Elec. Co., 354 F.2d 859, 862–863 (5th Cir. 1966); Pennsylvania R.R. Co. v. Dillon, supra, at 294–295; Duba v. Schuetzle, supra, at 574–575.

It is therefore clear that the move of Customs facilities to Terminal Island is a governmental action which cannot be deemed a violation of any legal right of the plaintiff or its membership. There is no legally protected right to be free of the effects of the move to Terminal Island.

6. Footnote 2, supra.

7. Footnote 1, supra.

 Plaintiff has contended that "false and fraudulent" representations were made by defendants to plaintiff and its members regarding the nature of the move to be made. While defendants deny that any false or fraudulent representations were made, even assuming, for the sake of argument, that some were made, they could not possibly have the effect of vesting in the plaintiff or its members a legal right that the customs-collection district facilities remain where they are presently located. No authority has been, or can be, cited for the proposition that any such misrepresentations, as have been alleged by plaintiff, can have the operative effect of vesting in the plaintiff a legal right that the customs-collection district headquarters remain where it is.

 Once again, assuming, for the sake of argument, the truth of plaintiff's allegations relating to misrepresentation, it cannot be contended that any of the Government officers referred to by plaintiff have the authority to bind the United States Government to keep the customs-collection facilities in the downtown Los Angeles area in perpetuity. The United States would neither be bound nor estopped by the statements of an officer who purported to act to bind the Government, though he was without authority to do so. Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 383–384, 68 S.Ct. 1, 92 L.Ed. 10 (1947); United States v. Rossi, 342 F.2d 505, 506–507 (9th Cir. 1965); United States v. Certain Parcels of Land, 131 F.Supp. 65, 73–75 (S.D.Cal.D.C.1955); Smale & Robinson, Inc. v. United States, 123 F. Supp. 457, 464–467 (S.D.Cal.C.D.1954).

 It does not appear that plaintiff is relying on the wording of Section 702 of Title 5, United States Code, which refers to "a person * * * adversely affected or aggrieved by agency action within the meaning of a relevant statute" to establish standing to sue in this case. No such "relevant statute" has been cited, and none can be, which would provide a basis for judicial review. Such a statute is an absolute prerequisite to standing pursuant to this portion of Section 702. Braude v. Wirtz, supra, at 707–708; Kansas City Power & Light Co. v. McKay, supra, at 931–932.

### "Abbott Laboratories v. Gardner" has no application here.

In its Points and Authorities in Opposition, plaintiff has cited Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). As set forth in the Abbott case, the Commissioner of Food and Drugs, pursuant to the authority delegated by the Secretary of Health, Education, and Welfare, had issued certain regulations relating to the labeling and advertising of prescription drugs. The regulations were designed to implement a 1962 amendment of the Federal Food, Drug, and Cosmetic Act. The regulations required that labels and advertisements for prescription drugs, which bear proprietary names for the drugs or the ingredients, carry the corresponding "established name" every time the proprietary or trade name is used.

A group of drug manufacturers and the Pharmaceutical Manufacturers Association filed a suit for declaratory and injunctive relief challenging the regulations on the ground that the Commissioner had exceeded his authority under the statute. The District Court, on cross-motions for summary judgment, had granted the declaratory and injunctive relief sought. The Court of Appeals for the Third Circuit reversed the District Court, first, on the ground that the pre-enforcement review of the regulations was unauthorized and therefore beyond the jurisdiction of the District Court. The Court of Appeals also held that there was "no actual case or controversy" existing and therefore there was no relief available under the Administrative Procedure Act or under the Declaratory Judgment Act. Upon petition, certiorari was granted and the Supreme Court reversed the decision and remanded the case to the Court of Appeals for the Third Circuit to review

the District Court's decision that the regulation was beyond the power of the Commissioner.

The decision of the Supreme Court in the *Abbott* case is based upon an examination by the Court of two questions. At pages 139 to 148 of 387 U.S., 87 S.Ct. 1507, the question considered was whether or not Congress, by the Federal Food, Drug, and Cosmetic Act, had intended to forbid pre-enforcement review of the type of regulation involved. This question was answered in the negative by the rejection of the government's argument that, because the statute includes a specific procedure for review of certain enumerated kinds of regulations, not encompassing those of the kind involved in the *Abbott* case, other types were necessarily meant to be excluded from any pre-enforcement review. The Court was not persuaded that, in the context of the entire legislative scheme, there was evinced a Congressional purpose to bar agency action not within the purview of the legislation from judicial review.

This initial question in the *Abbott* case is not material to the present case. None of the facts which give rise to the first question in the *Abbott* case exist in the present case. There are no regulations in this case which have been promulgated pursuant to certain legislation, which legislation might or might not indicate a Congressional purpose to limit judicial review to review of the promulgation of certain types of regulations thereby prohibiting review of other types of regulations.

The second question examined by the Court in the *Abbott* case was the issue of whether or not the controversy was "ripe" for judicial resolution. The discussion of this point appears at pages 148 to 156 of 387 U.S., 87 S.Ct. 1507. This question was answered in the affirmative and, in the course of formulating this answer, it was made clear that the previous decisions cited by defendants herein, in the motions presently under consideration, were not overruled, *sub silentio* or otherwise. In fact, the continued vitality of the line of authority

relied upon by defendants herein was specifically confirmed and clearly distinguished from the situation in the *Abbott* case.

As indicated in the *Abbott* case, on page 152 of 387 U.S., 87 S.Ct. 1507, immediate compliance with the terms of the regulations was expected. If, instead of complying, which compliance would involve some considerable expense, the petitioners chose the alternative of continuing to use the material which did not meet the regulations, they would run the risk of "serious criminal and civil penalties for the unlawful distribution of 'misbranded' drugs." 387 U.S. p. 153, 87 S.Ct. p. 1517.

In language directly applicable to the difference between the *Abbott* case and cases such as the instant case, it was stated as follows by the Supreme Court:

"The Government does not dispute the very real dilemma in which petitioners are placed by the regulation, but contends that 'mere financial expense' is not a justification for pre-enforcement judicial review. It is of course true that cases in this Court dealing with the standing of particular parties to bring an action have held that a possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action. Frothingham v. Mellon, 262 U.S. 447 [43 S.Ct. 597, 67 L.Ed. 1078]; Perkins v. Lukens Steel Co., 310 U.S. 113 [60 S.Ct. 869, 84 L.Ed. 1108]. But there is no question in the present case that petitioners have sufficient standing as plaintiffs; the regulation is directed at them in particular; it requires them to make significant changes in their everyday business practices; if they fail to observe the Commissioner's rule they are quite clearly exposed to the imposition of strong sanctions. Compare Columbia Broadcasting System, Inc. v. United States, 316 U.S. 407 [62 S.Ct. 1194, 86 L.Ed. 1563]; 3 Davis, Administrative Law Treatise, c. 21 (1958). This case is, therefore, remote from the

Mellon and Perkins cases." 387 U.S. at 153–154, 87 S.Ct. at 1518.

The present case, far from being remote, is directly governed by the *Mellon* and *Perkins* cases, which have been cited by defendants in the Memorandum of Points and Authorities in support of the present motions and are, in turn, cited by other cases relied upon by defendants. The factors existing in the *Abbott* case, in addition to the possible financial loss by the petitioners therein which led to an affirmative decision on the question of "ripeness" do not exist in the present case. There is no regulation directed at the plaintiff or its members in particular. There is no regulation requiring them to make significant changes in their everyday business practice. The move of the Customs facility to Terminal Island is not a Government "requirement" that plaintiff and its members do or not do anything at all. Plaintiff and its members will not be exposed to the imposition of strong criminal or civil sanctions because of the location or relocation of the Customs district headquarters at any particular place.

In conclusion, it is clear that the internal administrative matter of the relocation of a government facility is a governmental procedure which will never become a controversy "ripe" for judicial review.

### Plaintiff's attack on the Federal condemnation suit and stipulated judgment is futile.

In its Points and Authorities in Opposition, plaintiff has stated that the defendants "completely ignore or try to ignore the force and effect of the portion of the complaint which asks that the friendly condemnation suit be set aside and that the land (sic) donated by the City of Los Angeles to the Federal Government be set aside." Plaintiff has inserted its prayer in this regard as a part of the first cause of action which is allegedly pursuant to the Declaratory Judgments Act. The absolute nullity and ineffectiveness of a request for such relief in this suit by the present plaintiff, in a Federal court, against the present defendants, has appeared too obvious to merit any particular discussion.

In relation to this aspect of the case, the plaintiff has cited Section 526a of the California Code of Civil Procedure.[8] It is not at all clear what bearing Section 526a is supposed to have on the present action. The Section permits citizens to maintain certain types of suits against an officer, agent, or other person acting on behalf of a county, town, city, or city and county of the state. Needless to say, the State of California has not attempted to create an action against the Federal Government or any of its officers.

We have already discussed the questions of standing and jurisdiction. It hardly can be contended that any State statute, much less one that does not even purport to be applicable in its own terms, can grant jurisdiction to a Federal court where it does not otherwise exist or give standing to plaintiffs in a Federal action where they do not otherwise have standing.

In addition, it is incomprehensible how, even disregarding the an-

---

8. California Code of Civil Procedure, § 526a:

"§ 526a. *Actions against officers; scope of sections; municipal bonds*

An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein. This section does not affect any right of action in favor of a county, city, town, or city and county, or any public officer; *provided*, that no injunction shall be granted restraining the offering for sale, sale, or issuance of any municipal bonds for public improvements or public utilities."

swer to any other question of law, such relief can be obtained against the defendants in the present case. The General Services Administration is not a suable entity. Among the two remaining defendants, Lester D. Johnson and William R. Knoke, neither defendant was the condemnor of the land involved and there is no allegation, as there could not be, that either of these two defendants possess or purport to possess an interest in the real property involved.

The inapplicability of plaintiff's allegations in relation to the defendants herein becomes even clearer when fictional, parallel situations are posed. The Commissioner of Internal Revenue is the superior of those members of the Internal Revenue Service presently occupying some of the offices in the New Federal Building. No one could contend that the Commissioner would be the proper defendant in a suit to set aside the Government's ownership of the land beneath the new Federal Building. United States Marshals occupy offices in various United States Court Houses. It could not be contended that a suit against any particular United States Marshal occupying an office in a building would be a proper suit in which to request that the Government's ownership of the land beneath the particular building be set aside. The request for the same kind of relief in the present suit against the defendants Johnson and Knoke makes as little sense on its face. The logic in the request does not increase on further examination.

Pursuant to Rule 60(b) (3) of the Federal Rules of Civil Procedure, it is possible for a party to a final judgment to make a motion for relief from the judgment for the reason of "fraud * *, misrepresentation, or other misconduct of an adverse party." [9] A motion to set aside a judgment for that purpose

must be made not more than one year after the judgment was entered. Plaintiff's complaint is not a motion pursuant to Rule 60(b) (3), and in any event was not filed within the one year after entry of judgment. Once again, the owner of the land is not a party to the action, even if it be deemed that plaintiff's allegation of the City of Los Angeles as a "real party in interest" may somehow have the effect of making the City a party to this action.

In this discussion of the basic inapplicability of the request for relief involving the condemnation action, we do not in any way mean to imply that any fraud or misrepresentation was involved in the Government's acquisition of the land on Terminal Island at 300 South Ferry Street from the City of Los Angeles. In fact, defendants continue to deny strenuously that any such fraud or misrepresentation, as alleged by plaintiff, ever occurred. In any event it is clear that the question of fraud or misrepresentation is immaterial to the consideration of the defendants' motions herein.

*By reason of the doctrine of separation of powers, the relocation of the customs collection district headquarters is an act of the executive branch of the government not reviewable by the judiciary.*

 Under the United States Constitution, the functions of government are apportioned among the three branches of government. As stated in Commonwealth of Massachusetts v. Mellon, 262 U.S. 446, 43 S.Ct. 597, 67 L.Ed. 1078 (1923):

"The functions of government under our system are apportioned. To the legislative department has been committed the duty of making laws, to the executive the duty of executing them,

---

**9.** Federal Rules of Civil Procedure, Rule 60(b) (3):
"Rule 60.
"Relief from Judgment or Order
"(b) *Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and up-

on such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: * * * (3) fraud * * * misrepresentation, or other misconduct of an adverse party;"

and to the judiciary the duty of interpreting and applying them in cases properly brought before the courts." 262 U.S. at 488, 43 S.Ct. at 601.

■ Under the doctrine of separation of powers it is clear that the courts are without authority to interfere with ordinary ministerial and discretionary decisions and conduct peculiarly within the internal workings of an executive department.

In Marbury v. Madison, 1 Cranch 137, 170, 5 U.S. 137, 170, 2 L.Ed. 60 (1803), Chief Justice Marshall stated:

" * * * The province of the court is, solely to decide on the rights of individuals, not to inquire how the executive, or executive officers, perform duties in which they have discretion. Questions in their nature political, or which are, by the Constitution and laws, submitted to the executive, can never be made in this court."

In a long line of decisions since Marbury v. Madison, the courts have upheld this basic principle of our form of government. Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); Perkins v. Lukens Steel Co., 310 U.S. 113, 132, 60 S.Ct. 869, 84 L.Ed. 1108 (1940); Commonwealth of Massachusetts v. Mellon, 262 U.S. 446, 447, 488, 43 S.Ct. 597, 67 L.Ed. 1078 (1923); Decatur v. Paulding, 14 Peters 496, 516; 39 U.S. 496, 516, 10 L.Ed. 559 (1840); Royal Standard Ins. Co. v. McNamara, 344 F. 2d 240, 244 (8th Cir. 1965); Duba v. Schuetzle, 303 F.2d 570, 575–576 (8th Cir. 1962).

In furtherance of this constitutional scheme, the Administrative Procedure Act, specifically excepts from all judicial review that which "is committed to agency discretion by law". 5 U.S.C. § 701(a) (2) [formerly 5 U.S.C. § 1009 (a)].[10]

■ It is difficult to conceive of any matter more distinctly administrative in nature or less suited to judicial supervision than the determination of the location of the internal functions of the Executive Branch. To grant the plaintiff the relief it asks and enjoin the relocation of any part of the customs headquarters would require the Court to substitute its judgment for that of the Secretary of the Treasury, to whom, by virtue of Executive Order No. 10289, the President has delegated the powers conferred upon him by 19 United States Code, Section 2. The only criterion set forth in the statute and the executive order is the requirement of "needs of the service".

As the Supreme Court has said on two occasions, a hundred years apart:

"The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied, that such a power was never intended to be given to them." Perkins v. Lukens Steel Co., 310 U.S. 113, 131–132, 60 S.Ct. 869, 879, 84 L.Ed. 1108 (1940); Decatur v. Paulding, 14 Pet. 496, 516; 39 U.S. 496, 516, 10 L.Ed. 559 (1840).

*The Complaint does not present a case or controversy.*

■ It has been long established that the judiciary cannot and will not inquire how executive officers perform duties in which they have discretion, where no individual rights are involved. Marbury v. Madison, 1 Cranch 137, 170; 5 U.S. 137, 170 (1803). Unless a sharply focused "case or controversy" is presented, the courts will not act. This doctrine is preserved also in the Declaratory Judgments Act, under which the existence of a case or controversy is a pre-

10. 5 United States Code, § 701(a) (2):
"§ 701. *Application; definitions*
(a) This chapter applies, according to the provisions thereof, except to the extent that—

* * * * *
(2) agency action is committed to agency discretion by law."

requisite to a declaratory judgment. 28 United States Code § 2201.[11]

■■■ The phrase "case or controversy" is a term of art, whose meaning is narrower than, for example, "dispute". The controversy must · be definite and concrete, touching upon the legal relations of parties having adverse legal interests. Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–241, 57 S.Ct. 461, 81 L.Ed. 617 (1937).

■■■ The location of the customs district headquarters is by law committed to the President's discretion "as the needs of the service may require." Title 19, United States Code, § 2.[12] This statute could not be clearer that it is the efficacy of the internal workings of the Bureau of Customs that is to be the exclusive guiding principle in the choice of location. Nor could the statute be any clearer that the President is to be the sole judge of this matter. The statute does not confer any rights, duties or obligations on the present plaintiff or any other citizens. Under this statute, the President, or his delegate, owes no duty whatever to the present plaintiff, much less one which is enforceable by the courts. Thus, though there may be a dispute here insofar as the plaintiff opposes the relocation of the customs-collection district headquarters, there is no case or controversy within the meaning of that phrase as construed by the Supreme Court. Because the plaintiff lacks standing, because this action is unreviewable by virtue of the doctrine of separation of powers, and because plaintiff has no individual rights under 19 United States Code, Section 2, this case does not touch upon the *legal* relations of the parties. The parties to this case do not have those adverse legal interests which constitute a case or controversy. Duba v. Schuetzle, supra, at 575.

*Defendant General Services Administration, Region 9, is not a suable entity and therefore must be dismissed from the action.*

Congress has not constituted the General Services Administration a body corporate or authorized it to be sued *eo nomine.* Defendant General Services Administration, Region 9, is therefore not a suable entity and must be dismissed from this action. Blackmar v. Guerre, 342 U.S. 512, 514–516, 72 S.Ct. 410, 96 L.Ed. 534 (1952).

Now the Court, having made the foregoing decision, makes it Findings of Fact and Conclusions of Law as follows:

### FINDINGS OF FACT

1. The move and transfer of the offices of Customs-Collection District No. 27 from its location in the area commonly designated as downtown Los Angeles to the new Customs Building, recently completed to house said offices at Terminal Island, 300 South Ferry Street, Los Angeles, California (hereafter referred to as "the move and transfer") is authorized under the general authority of the Secretary pursuant to 19 United States Code, Section 3 and the authority of the Secretary pursuant to 19 United States Code, Section 2 and Executive Order 10289 of September 17, 1951, 16 Federal Register 9499 (1951), with full knowledge and approval of the Secretary.

2. The move and transfer is from a place within the area of District No. 27 to another place within the area of District No. 27, as that area is set forth in 19 C.F.R. § 1.1(c).

3. The move and transfer is between places entirely within the boundaries of the customs port of entry of Los Angeles, California, the headquarters port of Dis-

---

11. 28 United States Code § 2201:
 "§ 2201. *Creation of remedy*
 In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and oth-

er legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

12. Footnote 2, supra.

trict No. 27, as set forth in T.D. 55341, 26 Federal Register 2550-51 (1961).

4. The revised prospectus for the customs building on Terminal Island, which building has since been completed, submitted by the Administrator of the General Services Administration on May 23, 1962, in which prospectus it was set forth that the interests of the government would be more effectively served by the consolidation of all of the activities of the Bureau of Customs in Los Angeles at a single location in the harbor area, except for the mail examination function and a small administrative group, was the subject of a hearing held before the Subcommittee on Public Buildings and Grounds, Committee on Public Works, of the United States Senate, on June 27, 1962, and was approved by both the House and the Senate Committees on Public Works by resolution dated July 20, 1962.

5. The actions of the defendants Lester D. Johnson, Commissioner of Customs, and William R. Knoke, District Director of Customs for the District of Los Angeles, sought to be enjoined, namely the move and transfer, are actions within the scope of said defendants' authority and employment as officers and employees of the United States of America.

6. Prohibiting the defendants in this action from implementing the move and transfer, or requiring that the move and transfer be undone, would be a restraint on Government action and an interference with the public administration.

7. The only possible injury to the plaintiff and the Customs and Freight Brokers who constitute plaintiff's membership, as a result of the move and transfer, would be economic loss.

8. The only injury to the plaintiff and the Customs and Freight Brokers who constitute plaintiff's membership, which plaintiff contends would result from the move and transfer, is economic loss.

9. The allegations of the original complaint and the supplementary and amended complaint, to the extent that they are inconsistent with the Findings of Fact herein, are untrue.

10. The following Conclusions of Law, insofar as they may be concluded Findings of Fact, are so found by this Court to be true in all respects. From the foregoing facts, the Court concludes that:

## CONCLUSIONS OF LAW

### I

■ The President of the United States is authorized from time to time to change the location of the headquarters, including all parts thereof, in any customs-collection district as the President deems the needs of the United States Customs Service may require, pursuant to 19 United States Code, Section 2.

### II

Pursuant to the delegation conferred by Executive Order No. 10289 of September 17, 1951, 16 Federal Register 9499 (1951), and pursuant to 19 United States Code, Section 3, the Secretary of the Treasury is authorized from time to time to change the location of the headquarters, including all parts thereof, in any customs-collection district as the Secretary deems the needs of the United States Customs Service may require.

### III

Assuming, without finding, that the move and transfer would result in economic loss to the plaintiff and its members, plaintiff and its members are without standing to sue for judicial review of the Government action in moving the facilities of Customs-Collection District No. 27 to Terminal Island pursuant to 5 United States Code, Sections 701–706.

### IV

Plaintiff and its members are without standing to sue for judicial review of the Government action in moving any or all of the facilities of Customs-Collection District No. 27 to Terminal Island.

## V

Assuming, without finding, that a contract exists between the United States of America, the Bureau or Customs or the defendants herein, and the plaintiff or its members, the terms of which require the retention of any or all of the facilities of Customs-Collection District No. 27 in the downtown Los Angeles area, this Court is without jurisdiction to entertain an action for specific performance of such a contract against the Government.

## VI

The action of the defendant officers in implementing the move and transfer, which plaintiff seeks to enjoin, is action of the Government of the United States and is Constitutional.

## VII

The within suit is an unconsented-to suit against the sovereign, the United States of America, though brought nominally against government officers, and this Court is without jurisdiction of the suit.

## VIII

The decision of the Secretary of the Treasury to make and authorize the move and transfer is a discretionary function of the executive branch of the Government and is not reviewable by this Court.

## IX

No legal right of plaintiff or its members is violated by the move and transfer.

## X

The suit by plaintiff herein against the moving defendants does not present a case or controversy.

## XI

Defendant General Services Administration, Region 9, is not a suable entity and must be dismissed from this action because Congress has not constituted the General Services Administration a body corporate or authorized it to be sued *eo nomine*.

## XII

Any conclusions of law contained in the Findings of Fact are deemed incorporated herein by reference.

## XIII

There is no genuine issue as to any fact material to the complaint for declaratory judgment and injunction or to the amended and supplementary complaint seeking further declaratory relief. The complaint and amended and supplementary complaint and each and every cause of action and claim for relief therein contained fail to state a claim upon which relief can be granted. Accordingly, plaintiff is not entitled to any relief under or by virtue of the complaint or the amended and supplementary complaint and, particularly, is not entitled to a declaratory judgment or an injunction.