**LOCAL 1106, NATIONAL FEDERATION OF FEDERAL EMPLOYEES and Nick Kushner, both individually and as President of the N.F.F.E.**

v.

**Melvin R. LAIRD, Secretary of Defense, Roger T. Kelley, Assistant Secretary of Defense for Manpower and Reserve Affairs, Stanley R. Resor, Secretary of the Army, G. B. Russell, Deputy Assistant Secretary of the Army for Installations and Logistics, Colonel William F. Gallogly, Audio-Visual Chief, Department of Defense, Colonel Donald S. Bowman, Commanding Officer, Army Pictorial Center, Defendants.**

Civ. A. No. 1752–70.

United States District Court,
District of Columbia.
June 23, 1970.

**154**

Wayne S. Bishop, Malcolm Lassman, Washington, D. C., for plaintiffs; Leonard Leibowitz, Flushing, N. Y., of counsel.

David J. Anderson, Harland F. Leathers, Dept. of Justice, Gil Zimmerman, Asst. U. S. Atty., William D. Ruckelshaus, Asst. Atty. Gen., Washington, D. C., for defendants.

## MEMORANDUM–ORDER

GASCH, District Judge.

Plaintiffs have moved for a preliminary injunction to restrain defendants from proceeding with closure of the Army Pictorial Center (APC) in Long Island City, New York, pending pursuit by them of possible administrative remedies under Executive Order 11491 and/or the grievance procedures contained in their collective bargaining agreement. Following a hearing on June 19, 1970, the Court took plaintiffs' motion under advisement. Having considered the arguments of counsel at the hearing, and the affidavits and memoranda submitted by the respective parties, the Court makes the following findings and conclusions:

Plaintiff Local 1106 is a labor organization representing for the purposes of collective bargaining certain civilian employees of the U. S. Government employed at the APC. It has brought this action on behalf of all members and APC employees which it represents. Since August 10, 1962, Local 1106 has been the exclusive bargaining representative of all non-managerial civilian employees of the APC. Pursuant to Executive Order 10988, superseded on January 1, 1970, by Executive Order 11491, 34 F.R. 17605 (1969), U.S.Code Cong. & Admin.News 1969, p. 2948, the APC has entered into successive collective bargaining agreements with Local 1106 since July, 1963, the most recent of which was agreed to on October 17, 1969.

On March 6, 1970, defendant Melvin Laird announced that the APC would be closed effective June 29, 1970, as part of a general military budget curtailment in which 340 Department of Defense installations around the country are to be closed or have their operations reduced. Plaintiffs contend that the procedure by which the decision to close the APC was reached, and the actual order of closure itself, violate both the terms of their collective bargaining agreement with the APC and the provisions of Executive Order 11491.

More specifically, plaintiffs contend that the APC has violated the Agreement and Executive Order in essentially two respects: (1) First, they contend that the Government, by failing to consult with Local 1106 prior to deciding to close the APC, violated provisions of Executive Order 11491 and the collective bargaining agreement which obligate the employer to "consult, confer or negotiate" with a union with respect to "personnel policies and practices and matters affecting working conditions." Section 11(a), E.O. 11491, 34 F.R. 17610 (1969); (2) Second, plaintiffs contend that the decision to close was motivated, at least in part, by a desire on the part of APC management to eliminate the necessity of dealing with Local 1106's aggressive activities on behalf of APC employees. A closure motivated by this kind of "anti-union animus," plaintiffs contend, violates various provisions of E.O. 11491 and the collective bargaining agreement which require management to bargain in good faith with a union representative and which prohibit "interference, restraint, coercion or discrimination * * * by the Employer to discourage or influence participation in the union."

In ruling on a motion for a preliminary injunction, a court is ordinarily required to exercise its discretion upon the basis of a series of estimates. Among these are the relative injuries and inconveniences to the parties, the extent to which the public interest is involved, and the probability of ultimate success or failure of the suit. Perry v. Perry, 88 U.S.App.D.C. 337, 190 F.2d 601 (1951). Consideration of these factors in the context of this case—particularly the great unlikelihood that plaintiffs would ultimately prevail on the merits, and the

public interest in permitting the Secretary of Defense to exercise the managerial discretion vested in him by statute to provide efficient operation of national defense facilities—leads the Court to conclude that plaintiffs' motion for a preliminary injunction should be denied.

In reaching this conclusion the Court has considered carefully the fact that the employment of Local 1106's members at the APC will be terminated as of June 29, 1970, the date set for the closing. It is this aspect of the case that forms the thrust of the plaintiffs' complaint. The question then is whether this injury qualifies as "irreparable injury" to the extent that it would justify the granting of a preliminary injunction notwithstanding a contrary public interest and the small likelihood of ultimate success. The Court has concluded it does not.

■ Section 11(b) of Executive Order 11491 forecloses plaintiffs' argument that the APC management was required to consult with the union before the decision to close was finalized. That section states, in pertinent part, that

> the obligation to meet and confer does not include matters with respect to the mission of an agency; its budget; its organization; the number of employees; and the numbers, types, and grades of positions or employees assigned to an organizational unit, work project or tour of duty; the technology of performing its work; or its internal security practices.

This language expressly excludes from the collective bargaining obligation the kind of economic policy determinations which are inherent in a decision to close down a base. Moreover, a fair interpretation of the provisions of the Agreement which plaintiffs submit as requiring a duty of consultation is that the obligation to consult extends only to matters concerning the *operation* of the APC, and not to the feasibility of its continued use. Indeed, Section 3 of Article VI, outlining management's duties upon a reduction in forces, tacitly assumes that the union is not entitled to challenge a decision to reduce the work force at the APC.

■ Furthermore, it is doubtful whether plaintiffs' allegations of anti-union motivation are sufficient to call into effect the grievance procedures provided for in the Agreement and Executive Order. By statute Congress has given the Secretary discretion to

> "take appropriate action (including the transfer, reassignment, consolidation, or abolition of any function, power or duty) to provide more effective, efficient and economical administration and operation, and to eliminate duplication, in the Department of Defense."

10 U.S.C. § 25 (Supp.1970). This statute and Curran v. Laird, 136 U.S.App. D.C. 280, 420 F.2d 122, 131–132 (1969) (*En Banc*), indicate that the Government's management functions in the area of national defense are committed to the unreviewable discretion of the executive, leaving the Court without subject matter jurisdiction of plaintiffs' complaint. See Armstrong v. United States, 233 F. Supp. 188 (S.D.Calif.1964), aff'd 354 F. 2d 648 (9th Cir. 1965). Moreover, the right of a plaintiff to challenge an alleged violation of the provisions of the Executive Order is extremely limited. Executive Order 11491 is in essence a "formulation of broad policy by the President for the guidance of federal employing agencies," and "the President did not undertake to create any role for the judiciary in the implementation of this policy." Manhattan-Bronx Postal Union v. Grounouski, 121 U.S.App.D.C. 321, 350 F.2d 451, 456 (1965).

Plaintiffs, of course, claim a right to review growing out of a contractual right bestowed upon them by the Government, and in addition have advanced "a claim of the kind of bad faith * * * which in effect undercuts the assumption that the personnel involved have been genuinely acting as government officials." Curran v. Laird, *supra*, 420 F.2d at 131. But even if these facts establish subject matter jurisdiction over plaintiffs' claims, the Court can find no likelihood that they will prevail on the merits of their claim of anti-union motivation.

**156**

As plaintiffs conceded in oral argument, the challenged closure in this case is not to be equated with the closing of a branch of a private corporation because of labor difficulties. Textile Workers Union of America v. Darlington Manufacturing Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965). Nor is it comparable to a single dismissal for security reasons or the reduction in force cases where plaintiffs are able to show a positive relationship between governmental action and a protected right of the employee. Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).

The affidavits of J. Ronald Fox, Assistant Secretary of the Army, and of Brig. Gen. Emmet R. Reynolds, together with the findings of the two studies which the Army conducted on the utility of the APC demonstrate conclusively that valid economic justification existed for the decision to close the APC and, in addition, effectively rebut plaintiffs' claims that the closure was motivated by antiunion animus. Plaintiffs have in no respect controverted the Government's evidence that the closure is justified on economic grounds. Their affidavits do indicate that some management hostility toward the union existed. However, inasmuch as the Secretary of Defense possesses statutory authorization to transfer, reassign and consolidate the functions of facilities as he deems efficient, any review of the decision to close must be limited in nature. Los Angeles Customs & Freight Brokers Ass'n v. Johnson, 277 F.Supp. 525 (C.D.Calif.1967); Armstrong v. United States, 233 F.Supp. 188 (S.D.Calif.1964), aff'd, 354 F.2d 643 (9th Cir. 1965). If any valid economic basis exists for the closing, it is difficult to ascertain how a court could find an abuse of discretion on the part of the Secretary without substituting its judgment for that of the Secretary. The Court is satisfied that such an economic basis exists here. A greater probability of ultimate success is, in the Court's opinion, required before prolonged interference with the public's interest in efficient operation of military facilities can be justified.

Accordingly, the motion for preliminary injunction is denied.