**Zelner B. SOWDERS and Reta M. Sowders, Plaintiffs-Appellants,**

v.

**W. B. DAMRON, Defendant-Appellee.**

**No. 71-1317.**

United States Court of Appeals, Tenth Circuit.

March 31, 1972.

James L. Dow, Carlsbad, N. M., for plaintiffs-appellants.

Charles E. Anderson, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks and William Massar, Attys., Tax Div., Dept. of Justice, Washington, D. C., and Victor R. Ortega, U. S. Atty., Albuquerque, N. M., of counsel), for defendant-appellee.

Before BREITENSTEIN, HILL and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Zelner and Reta Sowders brought an action in tort against one W. B. Damron, an agent for the Internal Revenue Service. The gist of the complaint is that as the result of certain false and fraudulent misrepresentations made by Damron to the Sowders in connection with their income tax returns for the

---

years 1965, 1966 and 1967, the Sowders suffered "actual damage to * * * health, reputation and nervous stress and strain" and each sought compensatory and punitive damages.

Damron filed a motion to dismiss or, in the alternative, for summary judgment, based on the grounds that he was immune from suit because at the time of the events in question he was an officer and employee of the United States engaged in the performance of his duties and that all of his actions were within the scope of his official authority. In support of the motion, Damron offered several affidavits.

Upon hearing, the aforesaid motion was granted and the trial court dismissed the action and entered judgment for Damron. The Sowders now appeal. We affirm.

The Sowders' complaint is summarized as follows: (1) Mr. and Mrs. Sowders were in business in Carlsbad, New Mexico, during the years of 1965, 1966 and 1967, and no income tax returns were filed for those years; (2) their business venture was not successful and in 1968 they were adjudged bankrupt; (3) Damron, "while working as a Revenue Officer for the Internal Revenue Service in 1970," negotiated a settlement of delinquent taxes whereby Zelner Sowders agreed to pay the sum of $1,000 in settlement thereof; (4) Damron falsely represented to Reta Sowders, who was at that time divorced from Zelner, that the tax liability had been settled but that her signature was required since the returns had been figured on the basis of a joint return for Zelner and Reta, Damron at the time knowing full well that Reta denied any tax liability on her part; (5) the $1,000 which Zelner gave the Internal Revenue Service in full settlement was later returned on the ground that the settlement had not been completed and that Reta was not advised of such fact; (6) Damron subsequently received from Zelner a partial payment on his tax liability on the false representation that no levy would be made on the property of either Zelner or Reta for a period of one year thereafter; and, (7) Damron thereafter did levy on property belonging to Reta.

The foregoing recital is sufficient to indicate the general nature of the complaint. It is noted that the amount of the tax due and owing for the years in question is not here in issue, nor is it apparently even in dispute, the Sowders alleging in their complaint that the total amount of the liability was the approximate sum of $4,450. Rather, the gravamen of the Sowders' complaint is that they suffered impaired health and reputation by virtue of Damron's various acts.

As indicated, Damron filed several affidavits in support of his motion to dismiss. The matters referred to in such affidavits were not put in issue by any counter affidavits and the recitals contained therein do not appear to be in dispute. One affidavit set forth Damron's job description as one entailing the following duties and responsibilities:

"The incumbent has independent responsibility for difficult collection activity work which requires the application of legal and business knowledges and investigative techniques in collecting delinquent accounts, securing delinquent returns, participating in compliance programs, and rendering financial and tax advice to taxpayers relative to various types of taxes administered by the Internal Revenue Service."

Another affidavit from Damron's supervisor declared that Damron's actions in handling Sowders' offer of compromise was "in the course and performance of his duties as a Revenue Officer and well within the scope of his authority as a Revenue Officer," and that the levy on Reta's bank account was made after consultation with his supervisor and with the latter's approval.

It was on this state of the record that the trial court granted Damron's motion to dismiss, relying on such cases as Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959); Spalding v. Vilas,

161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896); and Gregoire v. Biddle, 177 F. 2d 579 (2d Cir. 1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950).

The law of privilege as a defense by government officers to civil damage suits for defamation and other torts has been long applied to the judicial, legislative and executive branches of our Government. *See* Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) for a review of the cases bearing on this matter. The raison d'etre for such rule is well expressed by Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949), where appears the following:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books."

■ Counsel would escape the application of the foregoing principle on either of two grounds: (1) the immunity applies only to "high" governmental officials, and Damron is but a "revenue officer whose authority is limited to collection of taxes due and owing the United States Government"; and, (2) the immunity does not exist where the government official exceeds the authority of his office.

In Barr v. Matteo, *supra,* it was held that the doctrine of executive immunity first announced in Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), was not to be restricted to executive officers of cabinet rank, but was equally applicable to "officers of lower rank in the executive hierarchy." In Garner v. Rathburn, 346 F.2d 55 (10th Cir. 1965), we recognized the trend to expand the immunity to include "even to so-called minor officials of the government." In *Garner,* the immunity was held to apply to the supervisor of a street maintenance crew. We conclude that the immunity does apply to an agent of the Internal Revenue Service, such as Damron.

■ The argument that Damron's actions exceeded his authority and were outside the authority of his office is equally unavailing. This particular argument is based on the premise that fraudulent and deceitful conduct on the part of a government official is necessarily outside the scope of his authority and that, as concerns Damron's various actions, such were not within the authority of his particular office. Concerning limitations on the immunity, reference is again made to Gregoire v.

Biddle, *supra*, where Judge Hand spoke as follows:

"The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him. For the foregoing reasons it was proper to dismiss the first count."

In Barr v. Matteo, *supra,* where the acts complained of were allegedly libelous statements, it was stated that if the acts complained of are within the "outer perimeter" of the governmental official's line of duty, the privilege is applicable, even though attended by malice.

A case applying the doctrine of immunity to an agent of the Internal Revenue Service is Bershad v. Wood, 290 F. 2d 714 (9th Cir. 1961). That case has certain similarities to the instant one. There, it was alleged that Internal Revenue Service agents had maliciously caused a levy to be made on the bank account of the plaintiff knowing full well that the United States had no lien on her bank account. There, the plaintiff recognized the general rule that officers of government are immune from civil suits for acts committed by them within the scope of their authority and in the performance of their official duties and contended that the immunity did not apply because the agents had acted beyond the scope of their authority and were therefore liable to her in damages. In *Bershad,* it was held that the acts com-plained of, even though in error and even assuming they were maliciously inspired, were still within the scope of the agents' official authority and therefore privileged. In so holding, the court cited with approval Gregoire v. Biddle, *supra,* and Cooper v. O'Conner, 69 App.D. C. 100, 99 F.2d 135 (1938), cert. denied, 305 U.S. 643, 59 S.Ct. 146, 83 L.Ed. 414 (1938). In the latter case appears the following apt language:

"It is not necessary—in order that acts may be done within the scope of official authority—that they should be prescribed by statute; or even that they should be specifically directed or requested by a superior officer. It is sufficient if they are done by an officer *'in relation* to matters committed by law to his control or supervision'; or that they have *'more or less connection* with the general matters committed by law to his control or supervision'."

" * * * [I]f the act complained of was done within the scope of the officer's duties as defined by law, the policy of the law is that he shall not be subjected to the harassment of civil litigation or be liable for civil damages because of a mistake of fact occurring in the exercise of his judgment or discretion, or because of an erroneous construction and application of the law."

To the same general effect is our decision in Chavez v. Kelly, 364 F.2d 113 (10th Cir. 1966). That case did not involve an Internal Revenue agent, but a federal narcotics agent. It was there alleged that the acts complained of were malicious, reckless, without probable cause and completely beyond the "outer perimeter of any office or duty of Kelly as a federal [narcotics] officer." We there held that the mere allegation that the actions of the agent were outside the perimeter of the agent's duties did not make them so, and that whether the acts complained of were within the agent's course of duty was a question of law. On the facts of that case, summary judgment was entered for the agent on the

grounds that the acts complained of were within the outer perimeter of the duties of his office.

From the affidavits it becomes apparent that at all times Damron was dealing with the Sowders in his official capacity as an agent of the Internal Revenue Service and under the authorities above cited we conclude that the acts complained of were well within the outer perimeter of his line of duty.

Judgment affirmed.