Mary GRANGER, Plaintiff-Appellant,

v.

Alfred MAREK, Gerald Kobey, Larry
Griffith, Burton Roth,
Defendants-Appellees.

No. 76–1582.[1]

United States Court of Appeals,
Sixth Circuit.

Argued June 8, 1978.

Rehearing and Rehearing En Banc
Denied Oct. 9, 1978.

Merritt, Circuit Judge, filed a dissenting opinion.

James D. O'Connell, Highland Park, Mich., for plaintiff-appellant.

James K. Robinson, U. S. Atty., Detroit, Mich., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Robert T. Duffy, Jonathan S. Cohen, Jeffrey S. Blum, Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendants-appellees.

Before ENGEL and MERRITT, Circuit Judges, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

Plaintiff-appellant initiated this lawsuit in the Circuit Court of Wayne County, Michigan, against defendant-appellee agents of the Internal Revenue Service (IRS),[1] charging that appellees had engaged and conspired to engage in harassing conduct amounting to tortious interference with her business as a professional preparer of tax returns and to intentional infliction of mental and physical distress. In her complaint, appellant alleged that appellees had advised appellant's clients (1) that they would be investigated and have their tax returns audited solely as a result of doing business with appellant, (2) that appellant's competitors would charge less and should be employed, and (3) that appellant was being investigated for possible criminal activity. Appellant further complained that appellees had threatened to put her out of business. She requested a total recovery of 3.25 million dollars for damages to her business and reputation and to her physical and mental health.

On appellees' motion, the case was removed from the Michigan court to the federal district court under the provisions of 28 U.S.C. § 1442(a)(1).[2] In the district court, appellant moved for preliminary and permanent injunctive relief, and appellees moved to dismiss the case for lack of jurisdiction and for failure to state a claim upon which relief could be granted, supplementing their motion with affidavits filed by each appellee that denied the substance of appellant's charges.

The district court considered the pleadings and affidavits and heard testimony over several days. The district court then issued an opinion, holding that appellees were immune from suit because they had acted within the scope of their official duties as federal executive officers. Appellant's motion for injunctive relief was denied, and appellees' motion to dismiss was granted. Appellant has perfected this appeal from the district court's judgment dismissing the case.[3]

We affirm. Although the district court was imprecise, in light of the Supreme Court's recent decision in *Butz v. Economou,* —— U.S. ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), in defining the scope of immunity accorded to federal executive officials, it did not err in concluding that the appellee IRS agents were protected by the immunity that does exist for federal officers.

There are three legal premises upon which the district court's holding rests. Those premises are: (1) that some federal officials enjoy an absolute immunity for discretionary action performed within the scope of their duties, (2) that the appellee IRS agents fall into the category of Government officials who could claim immunity, and (3) that they were acting within the scope of their duties so as to entitle them to claim the immunity.

The district court's first premise, that there is an absolute immunity for a federal officer's discretionary conduct within the scope of his official duties, was based on a famous passage in an opinion by Judge Learned Hand, *Gregoire v. Biddle,* 177 F.2d 579, 581 (2d Cir. 1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950), a passage which the Supreme Court in *Barr v. Matteo,* 360 U.S. 564, 571–72, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), quoted with full approval.

1. Alfred Marek is a Supervisory Investigator of the Intelligence Division, Internal Revenue Service. Gerald Kobey and Larry Griffith are revenue agents of the Internal Revenue Service. Burton Roth is a special agent of the Intelligence Division, Internal Revenue Service.

2. 28 U.S.C. § 1442(a)(1) provides:
    (a) A civil action or criminal prosecution commenced in a State court against any of the following persons may be removed by them to the district court of the United States

for the district and division embracing the place wherein it is pending:
    (1) Any officer of the United States or any agency thereof, or person acting under him, for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

3. Appellant does not base her appeal from the denial of her motion for injunctive relief.

It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation.

Judge Hand's opinion in *Gregoire v. Biddle, supra,* stated the law both prior to that case and for a number of years thereafter. In *Spalding v. Vilas,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 (1896), the Supreme Court had held that the Postmaster General, who had circulated among postmasters a notice, that the plaintiff in that case alleged had injured his reputation and had interfered with his contractual relationships, was im-

mune from suit, despite the plaintiff's allegations that the Postmaster General had acted with malice, because the Postmaster General had been performing official duties when he circulated the notice. In *Barr v. Matteo, supra,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, the Supreme Court held that a press release issued by an acting director of a federal agency announcing his intention to suspend two employees of the agency for certain conduct was within the scope of the director's duties, and that the director could not therefore be found liable to the employees on the ground that the release was libelous.[4]

Appellant argued in this Court, however, that Judge Hand's decision in *Gregoire v. Biddle, supra,* 177 F.2d 579, and the Supreme Court's decisions in *Spalding v. Vilas, supra,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780 and *Barr v. Matteo, supra,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, do not constitute the last word on the law of immunity. Appellant pointed to the Supreme Court's decision in *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), as indicating that executive officers in government are not entitled to an absolute immunity for actions within the scope of their duties.

In *Scheuer v. Rhodes, supra,* a case involving damage claims brought under 42 U.S.C. § 1983 for violations of constitutional rights alleged to have been committed by high state officials, the Supreme Court held that:

. . . in varying scope, a qualified immunity is available to officers of the executive branch of government, the variation being dependent upon the scope of discretion and responsibilities of the office and all the circumstances as they reasonably appeared at the time of the action on which liability is sought to be based. It is the existence of reasonable grounds for the belief formed at the time and in light of all the circumstances, cou-

---

**4.** A federal officer who acts outside his statutory authority could be held liable for tortious acts. *See Butz v. Economou,* —— U.S. ——, 98 S.Ct. 2894, 2902–03, 57 L.Ed.2d 895 (1978), discussing *Little v. Barreme,* 2 Cranch (6 U.S.) 170, 2 L.Ed. 243 (1804), and *Bates v. Clark,* 95 U.S. 204, 24 L.Ed. 471 (1877).

pled with good-faith belief, that affords a basis for qualified immunity of executive officers for acts performed in the course of official conduct.

416 U.S. at 247–48, 94 S.Ct. at 1692. This standard the Supreme Court subsequently applied to alleged violations of constitutional rights by school administrators, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 314 (1975), and by state hospital superintendents, *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). Courts of Appeals have applied the same standard to alleged violations of constitutional rights by federal officers, on the theory that different standards of immunity should not apply to state and federal executive officials. *Apton v. Wilson,* 165 U.S.App.D.C. 22, 506 F.2d 83 (1974); *Economou v. U.S. Dept. of Agriculture,* 535 F.2d 688 (2d Cir. 1976), *vacated on other grounds,* —— U.S. ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978); *State Marine Lines v. Shultz,* 498 F.2d 1146 (4th Cir. 1974); *Weir v. Muller,* 527 F.2d 872 (5th Cir. 1977); *Jones v. United States,* 536 F.2d 269 (8th Cir. 1976), *cert. denied,* 429 U.S. 1039, 97 S.Ct. 735, 50 L.Ed.2d 750 (1977); *Mark v. Groff,* 521 F.2d 1376 (9th Cir. 1975); *G. M. Leasing Corp. v. United States,* 560 F.2d 1011 (10th Cir. 1977).

Whatever doubt there may have been on the question whether the *Scheuer* standard applies to federal executive officers was laid to rest by the Supreme Court in *Butz v. Economou, supra,* 98 S.Ct. 2894. There the Supreme Court held that there was only a qualified immunity from damages liability for federal executive officials charged with constitutional violations, absent some special showing of need for a full exemption from liability. The Supreme Court distinguished *Spalding v. Vilas, supra,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, and *Barr v. Matteo, supra,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, as cases that did not confront the issue of the liability of officials who have exceeded constitutional limits.

█ It is apparent from the district court's opinion that the district court did not recognize this limitation on the immunity available to federal executive officials. This did not matter, however, in the context of the present case. Appellant alleges that the appellee IRS agents have committed common law torts, not violations of her constitutional rights. The appellant's theory of recovery is that appellee IRS agents have tortiously interfered with her business and have intentionally inflicted mental and physical distress. Thus, in the present case, the rule of *Spalding v. Vilas, supra,* 161 U.S. 483, 16 S.Ct. 631, 40 L.Ed. 780, and *Barr v. Matteo, supra,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, still applies. *See Mandel v. Nouse,* 509 F.2d 1031 (6th Cir.), *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2630, 45 L.Ed.2d 671 (1975); *Berberian v. Gibney,* 514 F.2d 790 (1st Cir. 1975).

The district court's second premise, that the appellee IRS agents were Government officials entitled to claim the immunity, was based on the district court's determination that immunity should be extended to Internal Revenue Service agents because

[t]he implicit nature of the duties performed by the . . . investigatory agents of the IRS makes them particularly susceptible to suit by those who may be investigated. Tax collectors, and those who assist them, have never been the objects of over-affection by the American Public.

We believe that the district court was correct.[5] Moreover, this position is in accord with the decisions of other Courts of Appeals. *David v. Cohen,* 132 U.S.App.D.C. 333, 407 F.2d 1268 (1969); *Bridges v. Internal Revenue Service et al.,* 433 F.2d 299 (5th Cir. 1970); *Mark v. Groff, supra,* 521 F.2d 1376; *Sowders v. Damron,* 457 F.2d 1182 (10th Cir. 1972).

█ The district court's final premise, that the IRS agents were acting within the scope of their duties, was based on two findings: (1) that any contact between the

---

**5.** It is not unfair to mention here that appellant admitted in the district court that she had been convicted of willfully preparing false returns.

appellant or her clients and the appellees was maintained by the appellees in their capacity as agents of the IRS and in accordance with the normal operating procedures of the IRS, and (2) that the appellees were not engaged in anything other than the investigation and audits of tax returns. The district court rejected any argument that merely because the Government official commits a tort that the official is acting beyond the scope of his authority. The district court again relied upon a passage from Judge Hand's opinion in *Gregoire v. Biddle, supra,* 177 F.2d at 581, which was also quoted by the Supreme Court in *Barr v. Matteo, supra,* 360 U.S. at 572, 79 S.Ct. 1335.

The decisions have, indeed, always imposed as a limitation upon the immunity that the official's act must have been within the scope of his powers; and it can be argued that official powers, since they exist only for the public good, never cover occasions where the public good is not their aim, and hence that to exercise a power dishonestly is necessarily to overstep its bounds. A moment's reflection shows, however, that that cannot be the meaning of the limitation without defeating the whole doctrine. What is meant by saying that the officer must be acting within his power cannot be more than that the occasion must be such as would have justified the act, if he had been using his power for any of the purposes on whose account it was vested in him.

There is no question but that the district court correctly decided this issue—if the district court could properly make the findings it did to support the conclusion that the appellee IRS agents were acting within

the scope of their authority. There is a question, though, whether it was proper for the district court to make those findings, given the procedural posture of the case before it.

Because the district court considered the affidavits submitted by the appellees and heard testimony, Rule 56 of the Federal Rules of Civil Procedure on summary judgment applied in passing on appellees' motion to dismiss. *See* Rule 12(c), Federal Rules of Civil Procedure.[6] For judgment to be rendered for appellees at this stage of the litigation it was required that there be "no genuine issue as to any material fact" and that appellees be "entitled to a judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure.[7] Since appellees would be entitled to judgment as a matter of law if they were acting within the scope of their authority, the application of the standard for granting summary judgment in this case meant that there could be no dispute about the fact that the appellees were acting within the scope of their duties as revenue agents. "A court may not resolve disputed issues of fact in ruling on a summary judgment motion." *Felix v. Young,* 536 F.2d 1126, 1130 (6th Cir. 1976). *See United States v. Articles of Device, etc.,* 527 F.2d 1008, 1011 (6th Cir. 1976). The burden of showing the absence of a genuine issue of fact, particularly that concerning appellees' conduct and their scope of authority, was on the appellees since they were the parties seeking summary judgment. *See Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Fitzke v. Shappell,* 468 F.2d 1072, 1077 (6th Cir. 1972).

---

**6.** Rule 12(c) of the Federal Rules of Civil Procedure provides:

    **(c) Motion for Judgment on the Pleadings.** After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters *outside* the pleadings are *presented* to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable op-

portunity to present all material made pertinent to such a motion by Rule 56.

**7.** Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:

    The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

In support of their motion, appellees filed affidavits which asserted that appellees had acted only as revenue agents who were performing their duties. Rule 56(e) of the Federal Rules of Civil Procedure then became applicable. That Rule in pertinent part provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

Appellant could not therefore rest upon her pleadings—even assuming that her pleadings could be read to allege that the appellees had acted outside the scope of their authority—and be assured that summary judgment could not be entered against her. *Weir v. Muller, supra,* 527 F.2d 872. "The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Notes of Advisory Committee on 1963 Amendment.

Although appellant did not submit any affidavits, she did offer testimony to support the allegations in her pleadings. The district court found, however, that nothing in the extensive testimony heard by the Court indicated that appellees had acted outside the scope of their authority in investigating and auditing tax returns.

After examining the record, viewing the testimony in the light most favorable to the appellant, *see Fitzke v. Shappell, supra,* 468 F.2d at 1077, we must conclude that the district court correctly determined that there was no genuine issue of fact concerning whether appellees were acting within the scope of their duties. Appellees did conduct an investigation of appellant's preparation of tax returns; appellees examined books and witnesses. But the proof did not reveal that the appellees had stepped outside their positions as IRS agents. The issues of fact that were revealed during the taking of testimony by the district court concerned only whether the appellees had, while performing their duties as revenue agents, engaged in the kind of conduct that appellant alleged to be harassment. Given this state of the record, under Rule 56(e) of the Federal Rules of Civil Procedure, summary judgment for the appellees was appropriately granted.

The judgment of the district court dismissing the case is affirmed.

MERRITT, Circuit Judge, dissenting.

Rather than insulate the defendant IRS agents from all civil liability at common law under the doctrine of absolute immunity, I would reverse and remand to the District Court with instructions to apply to the conduct of the agents the standard of qualified immunity enunciated by the Supreme Court last term in *Butz v. Economou,* —— U.S. ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Qualified immunity is a standard based on reasonableness and good faith. Absolute immunity, as applied in this case, vests in the officer a discretion to commit common law and statutory wrongs free from judicial review.

Though the Court's holding in *Economou* is clearly limited to constitutional claims as distinguished from state tort claims (98 S.Ct. 2905 n.22, the reasoning of the opinion leads me to the conclusion that the choice between absolute immunity and qualified immunity for public officers should turn on the role and function of the official and not on whether the alleged wrong sounds in tort or under the Constitution. *Id.* at 2912–15. When framing a complaint against a public officer, an assault, a trespass, a false imprisonment or false arrest, a libel, as well as various invasions of privacy and interferences with contractual relationships, can be characterized just as easily as a constitutional wrong as a tort. Making immunity turn on a distinction between common law torts and constitutional wrongs simply encourages pleaders to wrap familiar common law concepts in a new vernacular of constitutional deprivation.

An IRS agent should not be entitled to absolute immunity when he breaks into a

home without a warrant and carries away private papers—whether the pleader calls the wrong a Fourth Amendment violation or a trespass *vi et armis* or *de bonis asportatis.* *Compare Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), *with Entick v. Carrington and Three Others, Messengers in Ordinary to the King,* 95 Eng.Rep. 807, 19 Howell State Trials 1030 (1765).

From the time of Bracton in the thirteenth century, the alleged wrongs of "ordinary" public officers have been reviewable in tort by courts of law under various common law writs. II Thorne, *Bracton On The Laws and Customs of England* 348 (1968). Such officers are not entitled to an unreviewable discretion to commit wrongs, either at common law or under the Constitution. Their conduct should be judged by a standard of reasonableness and good faith. In most instances where the officer is acting in the line of duty in accordance with statutory or administrative authority, the qualified immunity will protect him. The qualified immunity will protect the victim, however, in those instances when the officer, acting dishonestly or out of malice, abuses his authority.