**Jack L. WALKER, Plaintiff,**

v.

**Conner GIBSON, Jr., Defendant.**

**No. 84 C 2218.**

United States District Court,
N.D. Illinois, E.D.

Feb. 14, 1985.

Chanon Williams, Chicago, Ill., for plaintiff.

Asst. U.S. Atty., Ann L. Wallace, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

GETZENDANNER, District Judge:

Plaintiff Jack L. Walker filed a one-count defamation complaint in Lake County Circuit Court against defendant Conner Gibson, Jr. on February 8, 8, 1984. Both parties were employees of the Department of the Army at the time of the actionable conduct. On March 15, 1984, Gibson filed a petition for removal under 28 U.S.C. § 2679(d), alleging that Walker sought monetary relief for actions taken by Gibson as a federal official and within the scope of his employment.

Walker filed a three-count First Amended Complaint on July 3, 1984. In Count I of his amended pleading, Walker repeats his claim of defamation, adding allegations that Gibson's conduct was outside of the scope of his duties. In Count II, he claims interference with his employment contract with the United States, adding allegations that Gibson threatened Walker with reprisals if Walker reported Gibson's behavior to the authorities. Count III is a claim directly under the first amendment.

According to his amended complaint, Walker started working for the Department of the Army at Fort Sheridan on June 29, 1981, as a Planner-Estimator under the Supervision of Gibson. Beginning in September 1981, Gibson "commenced a malicious campaign of false and defamatory statements regarding Plaintiff's conduct with fellow employees, Plaintiff's job performance, and Plaintiff's hygiene." (First Amended Complaint ¶ 6.) Gibson allegedly made these statements at staff meetings and during working hours to Walker's fellow employees and superiors. Walker further alleges that Gibson's behavior took on forms other than verbal harassment. For example, Gibson required Walker to complete an unwarranted fitness for duty examination and to suffer a hearing on an unwarranted sexual harassment charge. Finally, Gibson threatened Walker with reprisals if he complained of Gibson's behavior to the Inspector General and others. (*Id.* at ¶ 13.)

According to Walker, Gibson's harassment continued unabated from September 1981 to May 17, 1983. On the latter date, the United States Army Civilian Appellate Review Office conducted a hearing at Fort Sheridan regarding Gibson's conduct. The Examiner, John M. Stewart, reached the conclusion on July 21, 1983 that Gibson had subjected Walker to "undue harassment and intimidation" and that corrective action against Gibson was warranted. (*Id.* at ¶ 15.)

Before the court is Gibson's motion to dismiss all three counts of the First Amended Complaint. Gibson argues for dismissal based on failure to comply with the statute of limitations, failure to state a claim upon which relief may be granted, and failure to allege actions by Gibson falling outside the scope of absolute federal official immunity.

## Removal Jurisdiction

■ The parties have not addressed the court's removal jurisdiction, but the court deems it important both to clarify the nature of the present case and to assure itself that it has subject matter jurisdiction. Removal was improper under the provision on which Gibson relies. Oddly, Gibson chose to remove under the Federal Drivers Act, 28 U.S.C. § 2679(b)–(e), which in turn is part of the Federal Torts Claims Act, 28 U.S.C. § 2671 ("FTCA"). A straightforward reading of the Federal Drivers Act makes clear that its removal provision is applicable to removal of actions against federal employees for losses and injuries resulting only "from the operation by an employee of the Government of any motor vehicle while acting within the scope of his office or employment...." 28 U.S.C. § 2679(b). Removal was thus improper under this provision.

The impropriety of removal under this statute must be stressed, for otherwise the government risks misconstruing this action. Under the Federal Drivers Act, removal under § 2679(d) renders the removed action one *exclusively* against the United States, and therefore under the FTCA. The action cannot be maintained against the employee as well, for the Act provides that employees are not personally liable for injuries stemming from operation of motor vehicles within the scope of federal employment. (The Act provides that if the operation is not within the scope of employment, the case is not against the United States and should be remanded to state court as an action against the employee. 28 U.S.C. § 2679(d).)

Were this action properly removed under the Federal Drivers Act, therefore, it would now be a claim against the United States, and would be subject to the provisions of the FTCA. *Rogers v. United States*, 675 F.2d 123, 124 (6th Cir.1982). This would require exhaustion of administrative remedies, compliance with special limitations periods, dismissal of such claims to which the United States has not consented to suit (such as claims for libel, slander, and interference with contract rights, 28 U.S.C. § 2680(h)), and dismissal of actions taken outside of the scope of the employee's duties.

Such a construction of Walker's claim would defeat his purpose in bringing the action against Gibson in the first place. Walker alleges that Gibson's acts were outside of his employment, and as Walker clearly does not intend to sue the United States, he has not alleged compliance with the FTCA. Walker's present allegations would allow immediate dismissal under the FTCA or remand under § 2679(d). The court thus stresses that removal under § 2679(d) was incorrect.

With this clarification, the court finds that it does have removal jurisdiction over this action. First, removal was proper under 28 U.S.C. § 1442(a)(1), which provides for removal of actions against federal officials. Second, as is usually the case, after removal to federal district court, plaintiff expanded his complaint, adding a claim under the federal constitution. Hence, removal based on 28 U.S.C. § 1331 would have been proper as well. The court now discusses the issues raised by Gibson's motion.

## Statute of Limitations

Gibson argues that the statute of limitations on defamation actions bars the assertion of Count I against him. Walker does not dispute Gibson's contention that the Illinois limitations period for defamation actions is one year. Ill.Rev.Stat., ch. 110 ¶ 13–201. According to Gibson, as the alleged defamatory conduct began in September 1981, see First Amended Complaint ¶ 6, the February 8, 1984 filing exceeded the applicable period. Walker does not respond to this argument in his October 19, 1984 responding memorandum.

■ In his First Amended Complaint, Walker claims that the defamation "continued unabated up and through May 17, 1983 in the form of Defendant's false and defamatory statements regarding Plaintiff made at staff meetings and during regular conditions to Plaintiff's fellow employees

and Plaintiff's superiors at Fort Sheridan, Illinois." *Id.* at ¶ 6. Hence, it is possible that the defamation complaint was timely filed, depending on when the action accrued. Gibson never attempts to define accrual under the Illinois statute. In addition, a motion to dismiss is not normally the proper vehicle for asserting a fact-based defense such as this where the allegations do not foreclose the possibility of a timely filing. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir.1980). The motion to dismiss on this ground is therefore denied.

### Absolute Federal Official Immunity

#### A. *Applicable Standard on Motion to Dismiss*

■ Before discussing Gibson's claim of absolute immunity from this suit for damages, the court must determine whether the procedural posture of this case allows the court to rule in Gibson's favor on this issue. The pending motion is one to dismiss. The court is aware of circumstances in which questions of absolute immunity have been resolved on a motion to dismiss. For example, where the complaint alleges facts constituting an absolute defense to the claim asserted, the complaint is vulnerable to dismissal under Rule 12(b)(6). *Lepucki v. Van Wormer*, 587 F.Supp. 1390, 1393 (N.D.Ind.1984). *E.g., Lawrence v. Acree*, 665 F.2d 1319, 1324–25 (D.C.Cir. 1981).

■ Immunity, however, is a fact-based issue that often requires the consideration of evidence before it may be determined. A motion for summary judgment, for example, is a proper vehicle for raising this defense. *Granger v. Marek*, 583 F.2d 781, 785–86 (6th Cir.1978); *e.g., Scherer v. Brennan*, 379 F.2d at 610–11. Here, while Gibson attaches an affidavit to his motion to dismiss, the court excludes the affidavit and declines to construe this motion as one for summary judgment. Fed.R.Civ.P. 12(b). It is clear from Walker's responding memorandum that he did not believe he was required to join issue with Gibson's affidavit, and construction of the motion to

dismiss as one for summary judgment would be unfair. The court's inquiry on this motion, therefore, is whether the allegations conclusively establish that Walker could offer no proof at trial that the misconduct was outside of Gibson's scope of authority. With this standard in mind, the court will examine the law of immunity to be applied in this case.

#### B. *Law of Federal Official Immunity*

Gibson argues that Counts I and II, the state tort claims, must be dismissed under *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959). *Barr* does not hold, as Gibson asserts, that "federal officials cannot be held personally liable in damages for state tort injuries...." (Defendant's Memorandum, filed 7/31/84, p. 4.) Rather, the Court in *Barr* extended the principle of absolute federal official immunity to executive officials of lower than cabinet rank. *Barr* made clear that this immunity extended to suits based on actions taken "within the outer perimeter of [the official's] line of duty ... despite ... allegations of malice in the complaint...." *Id.* at 575, 79 S.Ct. at 1341. In determining the "outer perimeter," courts should keep in mind, "not the title of [the] office but the duties with which [the officer] is entrusted—the relation of the act complained of to 'matters committed by law to [the officer's] control or supervision' [citation omitted]." *Id.* at 573, 79 S.Ct. at 1340. Courts should also consider the officer's rank, for discretion, and thus immunity, are broader as the officer's responsibilities and duties are greater. *Id.*

Concerning the "outer perimeter" element of *Barr* immunity, the Seventh Circuit has explained that "it is only necessary that the action bear some reasonable relation to and connection with the duties and responsibilities of the official." *Scherer v. Brennan*, 379 F.2d 609, 611 (7th Cir.), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 592, 19 L.Ed.2d 666 (1967). *Barr* is also read to incorporate a second element before absolute immunity may be invoked, and that is, that the conduct complained of have been

taken under the officer's "discretionary," as opposed to "ministerial," functions. *Araujo v. Welch,* 742 F.2d 802, 804–05 (3d Cir.1984); *Strothman v. Gefreh,* 739 F.2d 515, 519 (10th Cir.1984).

Walker argues that all of Gibson's alleged actions were outside of the scope of his authority. He argues additionally that those actions constituting violations of federal law and regulation as a matter of law cannot have been taken within the scope of Gibson's duties. Specifically, Walker alleges in Count II that Gibson violated a federal statute prohibiting reprisals, 5 U.S.C. § 2302(b)(8), and Army regulations prohibiting retaliation for filing complaints. Apparently following language contained in Justice Black's concurrence in *Barr,* Walker concludes that *Barr* does not provide immunity for conduct "forbidden by an act of Congress or governmental rule" and that Gibson's actions "would not be in the line of duty because they were expressly forbidden." (Plaintiff's Memorandum, filed 10/19/84, pp. 2–4.)

Concerning this last argument, the parties do not cite any authority for their positions apart from *Barr* itself. While the plurality opinion, in which four Justices joined, does not distinguish between an official's generally dishonest, malicious, or irresponsible behavior and unlawful behavior, Justice Black's sole concurring opinion at first blush appears to make such a distinction. This distinction, grasped by Walker to support the present argument, is contained in Justice Black's comment that Barr's actions were "forbidden neither by an Act of Congress nor by any governmental rule duly promulgated and in force." 360 U.S. at 576, 79 S.Ct. at 1342. Put in context, however, this comment does not support Walker's position.

In the concurrence, Justice Black discussed the possibility of formulating a body of federal libel law concerning criticism by federal employees, such as Barr's criticism, which was sought to be held libelous. Justice Black concludes with the comment that, while the scope of such a body of law need not be reached, "[i]t is enough for me here that the [alleged libelous statement] was neither unauthorized nor plainly beyond the scope of Mr. Barr's official business, but instead related more or less to general matters committed by law to his control and supervision." *Id.* at 577–78, 79 S.Ct. at 1342–43.

Hence, the concurrence is concerned with a right to criticize other federal employees of an employee in the position of Gibson. It reflects a determination that libel laws should not reach such criticism, at least in the case where the criticism does not violate law or regulation. It is not, therefore, direct support for the argument that immunity should not attach to such statements, but simply that libel laws may constitutionally reach those statements.

■ The plurality opinion in *Barr* also does not necessarily compel Walker's proposed exception to official immunity from personal damage actions. In *Barr,* the Court discussed immunity from actions that may have been taken with malice, dishonesty, improper purpose, or irresponsibility. It is clear that the fact that the action may be a state common law tort does not prevent a finding that the official acted within his or her authority. *Barr,* 360 U.S. at 572, 79 S.Ct. at 1340; *Granger v. Marek,* 583 F.2d at 785–86. Usually, behavior amounting to a common law tort, if not always a violation of federal law or regulation, is of the type of behavior that could be prohibited thereby. Hence, a rationale for distinguishing between tortious (especially intentionally tortious) acts that are not prohibited by federal law and those that are so prohibited is not immediately apparent. The most compelling distinction, of course, is that in the latter category the official is on notice that his or her contemplated conduct is wrongful. In the former category, the official can be deemed always on notice of potential wrongful behavior only when the contemplated action would constitute an intentional tort.

The parties do not discuss *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), except in the context of immunity under Count III, the federal con-

stitutional claim. However, *Butz* sheds much light on Walker's proposed exception. In *Butz*, the Court explained:

> *Barr* ... did not address the liability of the acting director had his conduct not been within the outer limits of his duties, but from the care with which the Court inquired into the scope of his authority, it may be inferred that had the release been unauthorized, and surely if the issuance of press releases had been expressly forbidden by statute, the claim of absolute immunity would not have been upheld.... It is apparent also that a quite different question would have been presented had the officer ignored an express *statutory* or constitutional limitation on his authority.
>
> \* \* \* \* \* \*
>
> *Barr* did not, therefore, purport to depart from the general rule, which long prevailed, that a federal official may not with impunity ignore the limitations which the controlling law had placed on his powers.

438 U.S. at 489, 98 S.Ct. at 2902 (emphasis added). After this discussion, the Court cited cases in which federal officials were held liable for acts violating federal *statutes, id.* at 490, 98 S.Ct. at 2902 (emphasis added), concluding that "[a]s these cases demonstrate, a federal official was protected for action tortious under state law only if his acts were authorized by controlling federal law," *id.*

Here, Walker alleges that Gibson's threats at retaliation for filing complaints about Gibson's conduct directly violated federal law prohibiting such retaliation. Retaliation cannot be considered "authorized" by federal law in the same way the compilation of disciplinary reports and termination recommendations, whether or not executed with malice or dishonesty, can be so characterized. However, the court need not reach the question of whether acts violating federal law automatically defeat absolute immunity, as even without such a rule, the retaliatory acts in this case could be shown to be outside of Gibson's authority.

The same is true of Gibson's allegations in Count I, although it is clear that Walker has a more difficult case to make under this count, which does not include allegations of retaliation. The court does not have before it information concerning the scope of Gibson's supervisory authority, the persons to whom he may and did make statements concerning Walker's behavior, and the content of Gibson's defamatory statements. With this incomplete record, the court declines to rule that under no circumstances could the allegations of Count I constitute an exception to absolute official immunity. The proper method for raising such an issue, as stated above, is through presentation of evidence, either at trial or in a motion under Rules 12(c) or 56.

The motion to dismiss Counts I and II based on absolute immunity is denied in full.

### Constitutional Tort

#### A. Standard for Implying a Direct Action

Gibson's final argument is that Count III, a damage claim for violation of Walker's first amendment rights, must be dismissed under the logic of *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). Walker argues that he may maintain a damages action against Gibson directly under the first amendment, *see Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); *Carlson v. Green,* 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), and that *Bush* does not compel a contrary result.

Walker's first amendment claim is described as follows:

> The above-described actions of Defendant against Plaintiff in threatening Plaintiff not to file complaints with the Office of Equal Employment Opportunity, the Inspector General, or writing his Congressman, interfered with the Plaintiff's rights [sic] freedom of speech and freedom of association which are protected

by the First Amendment. Insofar as Defendant harassed and intimidated Plaintiff during work, Defendant's actions violated Plaintiff's rights of freedom of association and freedom of speech with his fellow employees.

Plaintiff, as a result of Defendant's unconstitutional conduct, has suffered a chilling effect on the exercise of his First Amendment rights of freedom of speech and freedom of association.

(First Amended Complaint ¶¶ 19–20.) In addition to declaratory and injunctive relief, Walker claims general damages of $25,000, special damages of $1,685 for attorney's fees for representation before the U.S. Army Civilian Appellate Review Agency, recovery of lost wages and sick leave, punitive damages of $25,000, and reasonable attorney's fees and costs. Walker complains of no suspension, demotion, reduction in grade, or termination.

In *Bush*, an engineer employed at the George C. Marshall Space Flight Center claimed that his reduction in grade was motivated by a desire to retaliate against him for exercising his first amendment rights. Bush appealed this decision to the Federal Employee Appeals Authority, and after relief was denied in that forum, requested the Civil Service Commission's Appeals Review Board to reopen the proceedings. The Board heard Bush's appeal and ordered reinstatement with back pay. During the pendency of this last action, Bush filed a two-count damages action in Alabama state court, alleging common law defamation and a direct action under the first amendment. The action was removed to the federal district court, where it was dismissed for failure to state a claim upon which relief could be granted. The Fifth Circuit affirmed and, after vacation by the Supreme Court, again reaffirmed the dismissal.

The *Bush* Supreme Court examined the propriety of implying a claim under the first amendment in Bush's case. It assumed for purposes of the decision that (1) Bush's first amendment rights were in fact violated, and (2) Bush's civil service reme-dies were not as effective as a damages remedy and did not fully compensate him for the harm suffered. 103 S.Ct. at 2408. (The Court did not have to decide whether attorney's fees and compensatory damages could be covered under a so-called *Bivens* action. *Id.* at n. 9.) The Court noted further that Congress had neither expressly limited Bush's remedy to the civil services proceedings, nor had it explicitly precluded implication of a direct action under the federal constitution. *Id.* at 2408. It then examined the case before it in the context of *Bivens* and its progeny.

In *Bivens,* the Court allowed damages relief directly under the fourth amendment, explaining that "[t]he present case involves no special factors counselling hesitation in the absence of affirmative action by Congress," 403 U.S. at 396, 91 S.Ct. at 2004, as well as no indication that Congress meant to limit complainants to some alternative remedy, *id.* at 397, 91 S.Ct. at 2005.

Justice Harlan, in his concurring opinion, hinged the implication of a constitutional action on "whether compensatory relief is 'necessary' or 'appropriate' to the vindication of the interest asserted." *Id.* at 407, 91 S.Ct. at 2010. The deterrent effect of the action may be considered, but is only one of the many factors a court may consider when, like a legislature, it examines the "range of policy considerations" pertinent to creation of a remedy. *Id.* Justice Harlan also noted that relief through any other type of action was unlikely for Bivens. A state privacy action would be different in scope from one brought under the fourth amendment. Furthermore, rarely would someone in Bivens' position, subject to a warrantless search, be able to obtain injunctive relief. *Id.* at 409–10, 91 S.Ct. at 2011–12. Finally, Bivens would most likely be barred from suit against the United States. Hence, for Bivens, "it [was] damages or nothing." *Id.* at 410, 91 S.Ct. at 2011. In *Bush,* the Supreme Court agreed that inquiries such as those mentioned by Justice Harlan were appropriate. 103 S.Ct. at 2410.

These inquiries were conducted in *Davis v. Passman*, where the plaintiff, who could not be reinstated under the circumstances, had no alternative judicial relief for her discriminatory termination. *Bush*, 103 S.Ct. at 2410 & n. 13 ("For Davis, as for Bivens, 'it is damages or nothing.'"). Hence, since factors counselling hesitation and congressional determination foreclosing a damages claim were absent, the court allowed an action directly under the fifth amendment. In *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980), the Court similarly found no factors counselling hesitation in allowing a prisoner to maintain a damage action under the eighth amendment in addition to a claim under the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq. While *Carlson* contains language that the Federal Tort Claims Act remedy was less effective than a *Bivens* action, the *Bush* opinion makes clear that this is not a controlling factor in determining whether to imply a direct action under the constitution. *Bush*, 103 S.Ct. at 2408.

■ Hence, in determining whether to imply a direct claim under the first amendment, the court should consider whether such an action has already been foreclosed by Congress and whether factors counsel hesitation in creating that action. The *Bush* Court could find no congressional determination not to allow a constitutional damages action in the case before it, and hence examined whether factors counselled hesitation in that case involving reduction in grade. If these two factors did not foreclose a direct action, the next inquiry would be whether such an action is an appropriate vehicle for redress.

The Court first noted that the civil service remedies for an unconstitutional reduction in grade were constitutionally adequate. 103 S.Ct. at 2411 n. 14. It then pointed to concerns counselling hesitation, which are present here. *United States v. Standard Oil*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), and *United States v. Gilman*, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898 (1954), support the proposition that in matters involving the "complex of relations between federal agencies and their staffs," the selection of policies to be followed is more appropriately a legislative decision. 103 S.Ct. at 2411–12. In *Bush*, which involved remedies for adverse personnel decisions, the merits of the case strongly implicated "federal personnel polic[ies]," *id.* at 2412, and thus provoked a discussion of the scope of the courts' role in fashioning those policies.

The Court next examined the complex regulatory scheme in place for adjudicating constitutional violations attendant to adverse personnel actions, such as terminations, reductions in grade, and suspensions, explaining:

> The question is not what remedy the court should provide for *a wrong that would otherwise go unredressed*. It is whether an elaborate remedial system ... should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy for violation of employees' First Amendment rights.

*Id.* at 2416 (emphasis added). Concluding that the costs of review of disciplinary decisions were already significant, the Court held that it would not create a damages remedy for the violation at issue in Bush. *Id.* at 2417.

### B. Application of Standard to Present Facts

This case does not involve a matter on which Congress has limited the power of the courts to fashion a judicial remedy. *See* 103 S.Ct. 2408. However, it does clearly involve matters of "federal personnel policy" that may counsel hesitation before a direct action may be implied. Yet, an important distinction exists between this case and the case in *Bush*. Here, Walker

was not suspended, terminated, or subject to a reduction in grade. According to the complaint, he was subject to a long campaign of harassment and threats by his superior officer, but apart from having to contest a recommendation of termination, defend a sexual harassment allegation, and withstand the alleged abuse, he was not otherwise punished. Because of the nature of Gibson's conduct, Walker continues, the panoply of remedies discussed in *Bush* was not available to him.

First, the provisions of 5 U.S.C. §§ 7501–7514 are inapplicable, as Walker was not subjected to suspension, reduction in grade or pay, or removal. Second, the provisions of §§ 7101–7135 are inapplicable, as Walker was not protected by a negotiated grievance proceeding. Walker did take advantage of grievance procedures established pursuant to 5 U.S.C. §§ 1302, 3302, 7301 and codified at 5 C.F.R. Part 771. In the grievance proceeding, according to Exhibit A of Walker's responding memorandum, the Examiner recommended that the harassment be ceased and that two of Walker's supervisors, including Gibson, be counselled concerning retaliatory actions. Walker did not seek damages for pain, suffering, or illness in that action, but requested attorney's fees and reimbursement (recrediting) for sick leave used in an illness brought on by the harassment. The Examiner denied the requested relief of fees and recrediting, claiming no authority for that relief was provided by 5 C.F.R. Part 771.

Part 771 prescribes guidelines which agencies must follow in setting up grievance procedures for nonbargaining unit employees of an agency. 5 C.F.R. § 771.-204(a). Its coverage includes matters in which "an employee alleges that coercion, reprisal, or retaliation has been practiced against him or her." *Id.* at § 771.205. There appears to be no judicial review of the grievance procedures, and the regulations leave open the type of relief available thereunder.

Additionally, the government does not dispute Walker's claim that he could not avail himself of remedies under 5 U.S.C. §§ 7701–7703. Under those provisions, an employee in Walker's position may submit an appeal to the Merit Systems Protection Board "from any action which is appealable to the Board under any law, rule, or regulation." 5 U.S.C. § 7701(a).

The parties have not discussed the applicability of 5 U.S.C. §§ 2301–2302, 1201–1209, although Walker mentions that § 2302(b)(8) prohibited Gibson's retaliation threats. The court's own review of this statute reveals that at least some of Gibson's actions were prohibited thereunder. First, the act covers employees of the Department of the Army, which is an Executive Agency not specifically exempted from the act. 5 U.S.C. §§ 2301(a)(1); 2302(a)(2)(C). Gibson's actions in formally requesting Walker's termination, ordering a fitness for duty examination, and executing an unsatisfactory performance evaluation are likely "disciplinary or corrective" within the meaning of 5 U.S.C. § 2302(a)(2)(A)(iii).

Assuming that §§ 2301 and 2302 apply to the parties in this action, the subsection clearly applicable to this case is § 2302(b)(11), which proscribes the taking of personnel action in violation of the merit principles contained in § 2301. Section 2302(b)(8), cited by Walker, might be applicable as well. That subsection proscribes adverse personnel action taken in retaliation for disclosure of information regarding abuse of authority or mismanagement. While Walker suggests in Exhibit A of his responding memorandum that he disclosed information on mismanagement at Fort Sheridan, this exhibit is not an allegation and cannot be considered on this motion to dismiss. Walker does not allege that Gibson's actions were in retaliation for any disclosure of information regarding Gibson's harassment and abuse of authority. In fact, the factual allegations tend to suggest the opposite, that after the May 1983 disciplinary proceeding, the harassment ceased. If the taking of adverse personnel action as a way of preventing disclosure of information regarding personnel authority

can be considered reprisal, then Gibson's acts were prohibited by § 2302(b)(8). In any case, Gibson's acts violated several merit principles enumerated in § 2301.

It is clear that Walker does not have an implied action under §§ 2301 or 2302, and Walker does not attempt to state such a claim. The Seventh Circuit has recently found that § 2301 does not create a private statutory claim. *Schracta v. Curtis*, No. 82–2869, slip op. at 2–7 (7th Cir. Jan. 21, 1985). Other courts have held that § 2302 does not support a private claim. *Borrell v. U.S. International Communications Agency*, 682 F.2d 981, 988 (D.C.Cir.1982) (concerning § 2302(b)(8)); *Cutts v. Fowler*, 692 F.2d 138, 140 (D.C.Cir. 1982) (concerning § 2302(b)(1)(E) and (b)(10)); *Braun v. United States*, 707 F.2d 922, 925 (6th Cir.1983) (concerning § 2302(b)(8)). The court agrees with *Brown* and *Borrell* that § 2302(b)(8) does not create a private claim.

Because administrative remedies apparently exist for at least some of the conduct covered in the complaint, the allegations do not touch only upon matters that are not the subject of federal employment regulation, as Walker contends. However, *Borrell*, a pre-*Bush* case, held that the remedies of § 2302 did not foreclose a direct action under the first amendment. 682 F.2d at 990 (discussing legislative history's indication that § 2302 was meant as an additional protection for so-called "whistle-blowers"). A post-*Bush* case in the same circuit implicitly approved the continuing validity of *Borrell*'s holding on the constitutional claim. *Carducci v. Regan*, 714 F.2d 171, 176–77 (D.C.Cir.1983). *Brown* reached the opposite result, following the logic of the appellate court opinion in *Bush*, later adopted by the Supreme Court. *See also Watson v. U.S. Department of Housing and Urban Development*, 576 F.Supp. 580, 585–86 (N.D.Ill.1983) (claimed violation of § 2302(b)(8) could not also support a direct claim under first amendment after *Bush* ).

The court chooses to follow *Braun*. A review of the District of Colum-

bia cases in which a first amendment action coexists with a § 2302 violation reveals no explicit consideration for the "factors counselling hesitation" element so important to the Supreme Court's analysis in *Bush*. Moreover, *Borrell* involved a probationary employee who may not have been entitled to grievance proceedings. Congress has provided, in §§ 2301–2302, 1201–1209, a complex regulatory scheme designed to rectify most of the behavior at issue in this case. The merit principles make clear that Gibson was held to a "proper regard for [Walker's] constitutional rights," 5 U.S.C. § 2301(b)(2), and was prohibited from reacting to Walker in an arbitrary manner, *id.* at § 2301(b)(8)(A). This scheme, like Walker's grievance proceeding, appears to provide only equitable relief and the imposition of penalties on the offender. 5 U.S.C. § 1207(b). However, such relief, which would not involve monetary "equitable damage" in a case such as this, is constitutionally adequate here where Walker did not suffer any loss of salary through discharge, reduction in grade, suspension, or other penalty. Moreover, it should be noted that equitable relief was not available to Bivens. The procedures designed to halt the offending activity and penalize the offender sufficiently protect the first amendment rights of a person in Walker's position.

The fact that Walker did not obtain compensation for out-of-pocket costs directly related to Gibson's conduct does not indicate that the remedies in §§ 2301 and 2302 are constitutionally deficient. As discussed above, the Supreme Court made clear that the regulatory scheme that justifies refusal to imply a private claim may provide remedies that are not as comprehensive as a damages action. It should be noted additionally that in this case, involving activity that likely violated federal rules and regulations, Walker may defeat Gibson's shield of qualified immunity and recover damages in a tort action.

The court therefore finds that Walker is not without remedies under the scheme of federal regulation of employment. The ex-

istence of the federal regulatory scheme persuades the court not to imply a direct action here. A complete absence of any remedy under the regulatory scheme, however, would require a reevaluation of this decision. *See Bush,* 103 S.Ct. at 2417–18 (Marshall, J., concurring); *Egger v. Phillips,* 710 F.2d 292, 297–98 (7th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983) (pre-*Bush* case). The court has conducted its own review of the regulatory scheme applicable to Walker, without aid from the parties as to §§ 2301–2302. Should the court have erred in its determination that Walker was governed by this statute, the parties are encouraged to submit supplementary memoranda concerning the motion to dismiss by February 28, 1985. However, at this time, the court dismisses Count III for failure to state a claim upon which relief may be granted.

### Conclusion

The motion to dismiss Counts I and II is denied. The motion to dismiss Count III is granted.

It is so ordered.